*J. J. Scott,* for the plaintiff.
*A. P. Stone,* for the defendant.

———

JOHN R. WHITNEY & another, trustees, *vs.* COMMONWEALTH.

Middlesex.        December 14, 1905. — March 1, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Damages,* For property taken under statutory authority. *Metropolitan Park Commission. Parks and Park Commissioners. Practice, Civil,* New trial, Verdict.

Under St. 1894, c. 288, § 5, providing for the assessment of damages from the taking of land or any right therein by the metropolitan park commissioners for the construction of roadways and boulevards, one whose land is damaged by the

taking of other land for the purposes named in the act may recover damages although no part of his own land is taken. Following *Hyde* v. *Fall River*, 189 Mass. 439.

On a petition under St. 1894, c. 288, § 5, for the assessment of damages from the taking by the metropolitan park commissioners of land near that of the petitioner for the construction of a boulevard, it appeared that the only land of the petitioner shown to have suffered special and peculiar damage was land used as a mill pond adjacent to the park. The petitioner asked the presiding judge to make various rulings relating to the right of access from his land to the boulevard under the rules of the park commissioners, which could be material only in reference to the possible future use of the land after a change in its condition by filling. The judge instructed the jury that if the land should be filled and cut into building lots with separate ownership, the owners would have a right of access from their lots to the boulevard, that the rules of the park commissioners were and would be valid only so far as they were reasonable, and that rules that were reasonable under certain conditions might not be reasonable under different conditions. *Held*, that the petitioner was not aggrieved by the failure of the judge to instruct the jury more fully as to the rules of the park commissioners in their application to the petitioner's land either in its present condition or in its conjectural future condition.

Whether a rule of park commissioners is reasonable and binding as applied to known facts is a question of law, but where the facts are in dispute or uncertain it is a question to be decided by a jury under proper instructions.

On a motion for a new trial, on the ground that before the returning of the verdict the judge communicated with the jury during an adjournment of the court in the absence of counsel, it appeared that the case was a petition for the assessment of damages to the petitioner's land from the construction of a boulevard by the metropolitan park commissioners, and that four issues were submitted in writing to the jury two of which were to be answered by giving nominal damages and the other two by filling in such damages as the jury might find, that, after the adjournment of the court, at about nine o'clock in the evening the judge at his house out of town was notified by telephone by the court officer in charge of the jury, that the jury had agreed on the amount of damages but did not understand which of the forms were to be used for filling in the nominal damages and which for the amount found by them, that the judge by telephone directed the officer to bring the jury to the room in the court house in which the telephone was, that the officer did so, there being no one present in the room except the officer and the members of the jury, and that thereupon the judge by telephone explained to the foreman, who repeated the explanation to the jury, which forms were intended for the nominal damages and which for the amount found by them, that the jury then returned to their room and filled out the forms, which were signed by the foreman and sealed in the usual manner and the next morning were returned into court by the jury, when the verdict was affirmed. *Held*, that, although such communications with a jury are open to grave objections on account of the possibility of misunderstanding or mistake, in this case as no miscarriage of justice had resulted the communication did not require the court to set aside the verdict.

KNOWLTON, C. J. This is a petition for an assessment of damages growing out of a taking of land in Winchester by the metropolitan park commissioners in 1898, under the authority of

Sts. 1894, c. 288, and 1895, c. 450.   The first question is whether
the petitioners are entitled to a substantial sum or only to nomi-
nal damages.   In the original taking a strip of the petitioners'
land seven feet wide, on the northerly side of Walnut Street, was
included, and this gave the petitioners a vested right to compen-
sation for the land taken, and also for damages caused to their
remaining land.   But this right was subject to the right of the
park commissioners, under the St. of 1895, c. 450, § 2, to abandon
any portion of the land taken, and to have this abandonment
pleaded in reduction of damages for the taking, in any suit
brought to recover therefor.   The park commissioners subse-
quently abandoned this strip and reconveyed it to the petition-
ers.   In answer to a question submitted to them by the presiding
judge, the jury found, under instructions, that the damage for
the taking of this strip, in connection with the subsequent aban-
donment of it, was only nominal.

The whole of Walnut Street on which the petitioners' land
abutted was included in the taking, and there was a question, at
the trial, whether the fee to the centre of this street was owned
by the petitioners, or whether they owned only to the northerly
line of the street.   This depends upon the construction of their
deed, which we do not find it necessary to consider ; for the jury,
in answer to the special question submitted to them, found that
the damage to the petitioners' property, including that to their
remaining land, was the same, whether their boundary line was
at the centre of the street or at the side of it.   If the petitioners
are entitled to damages for the diminution in value of their re-
maining land, without reference to their ownership of the fee of
the street which was taken, it is of no consequence, under these
findings, whether they had a title to the land in the street or
not.

Since the decisions in *Sheldon* v. *Boston & Albany Railroad,*
172 Mass. 180, and *Hyde* v. *Fall River,* 189 Mass. 439, we con-
sider it settled that one whose land is damaged by a taking of
other land for a public use under statutes like that now before
us may recover his damages, even though no part of his own land
is taken.   The language of the St. of 1894, c. 288, § 5, which
provides for damages for this taking, is substantially the same as
that of the St. of 1890, c. 428, § 5, under which the cases just

cited were decided. The adjudication in *McSweeney* v. *Commonwealth*, 185 Mass. 371, is not inconsistent with this view. In that case no injury was done to the petitioners' land by the taking of other land and the appropriation of it to a public use. In the course of the work there was merely a digging up and obstruction of a drain in the land taken, which was there without legal right.

The application of this rule makes it unnecessary to consider whether, if the rule were otherwise, the right to receive the damages to their remaining land, which resulted from the taking of the strip seven feet wide, would continue after the abandonment of that strip by the park commissioners. Upon the undisputed facts and the findings of the jury, the petitioners are entitled to recover substantial damages.

The petitioners made many requests for rulings, some of which were refused. The first eight requests were given in substance, and no exception was taken in regard to them. The exception to the failure to grant in terms the ninth and tenth requests is sufficiently answered by the fact that the judge explained the statutes, substantially in accordance with these requests.

The requests numbered from eleven to fifteen inclusive relate to the right of access from their land to the boulevard, under the rules of the park commissioners, and the requests from number twenty-five to number thirty-four inclusive relate to the rights of the petitioners under other rules of the park commissioners. In reference to all these requests it is to be noticed, first, that the only land of the petitioners which is shown to be so situated that it might suffer special and peculiar damages from the taking and use of the land of others for a park, as distinguished from damages to the public generally, is the land used as a mill pond, adjacent to the park on the northerly side. In its present condition, and so long as it is devoted to its present use, the land is such that no one of these requests appears to be applicable. It is not shown that these rules and regulations have any bearing upon the subject of damages to land so used. It is only in reference to a possible use of another kind, after a change in the condition of the land by filling, that any of these matters become material. The judge gave correct general instructions in regard to these possible future conditions, and this was all that he could

properly do. He was right in telling the jury that, if the land should be filled and divided into building lots, in separate owner-ship, between the boulevard and other parts of the pond, the owners would have a right of access from their lots to this boule-vard, which is a public way. He was right in telling them that the rules and regulations were then valid and would be valid in the future only so far as they were reasonable, and that rules which were reasonable under certain conditions might not be reasonable under different conditions.

We are of opinion that the petitioners are not aggrieved by the failure of the judge to instruct more fully as to the rules and regulations, in their application to the petitioners' land in its present condition. We also think that he could not profitably give more definite instructions as to the rules as applied to future unknown possible conditions. Whether a rule is reasonable and binding, as applied to known facts, is a question of law, but where facts are in dispute or uncertain, such a question must be decided by a jury, under proper instructions.

In this case the facts and circumstances bearing upon the reasonableness of many of these rules, in their application to this park at the time of the trial, are not disclosed by the rec-ord, in such a way as to show any error of the judge in refusing to rule as matter of law upon the effect of the rules. Much less could he properly rule as matter of law what rules would be reasonable and what unreasonable in the future, when a part of the petitioners' mill pond may be made into building lots, and other conditions may be greatly changed. Upon the meagre evidence on this subject which appears in the record, the judge was not called upon to rule more particularly upon these regulations.

The exception to the refusal to give the rulings requested, numbered nineteen, twenty, twenty-two and twenty-three, must be overruled. The general instructions given, and the submis-sion of questions to the jury, together with the answers thereto, saved all the rights of the petitioners.

The judge, with the consent of counsel, submitted to the jury four questions to be answered. Two of them called for their assessment of damages for the taking, in connection with the subsequent abandonment, of the strip seven feet wide, the first

upon the theory that the petitioners' land extended into Walnut Street, and the second upon the theory that the petitioners' land extended only to the northerly line of Walnut Street. The other two called for an assessment of damages to all the petitioners' land, on the assumption that they might recover not only for the land taken, but for the diminution in value of the remaining land; the first of these questions being framed on the theory that the petitioners' land extended into Walnut Street, and the second upon the theory that it extended only to the northerly line of Walnut Street. At the close of the evidence the jury were instructed to return verdicts for only nominal damages for the taking of the strip seven feet wide.

After the end of the regular session for the day, the case having been submitted to the jury early in the afternoon, the judge remained for a considerable time, and before he left the court house the jury came into court, which was still open, and stated that they did not understand which forms of issues were to be filled in with nominal damages, and which were those requiring the insertion of the damages to be found by them. The statement in the record goes on as follows:

" The justice explained to them about the terms and meaning of the issues as framed, and then, to avoid misunderstanding, he called the foreman to the side of the desk and spread out the four papers, and read them aloud so that the other jurors in the jury seats could hear everything that took place, and showed the foreman the questions and designated the particular ones that were to be answered for nominal damages and those that were to be answered by inserting the amounts found by the jury. He then asked the foreman if he understood this, and the foreman said he did.

" When later the justice left the court house, he told the officer in charge of the jury, in case the jury should have any difficulty about the form of the issues, and should so inform him, to telephone to him, the justice, and if necessary, he would leave his home in Newton and come to Cambridge, and directed the officer, if the jury notified him that they had agreed, to ask the foreman if the jury found any difficulty about the form of the issues.

" About nine o'clock in the evening, the justice was informed

by the officer over the telephone that the jury had notified him that they had agreed, and were proceeding to write the answers to the issues, and that the officer pursuant to the justice's direction, had asked the foreman if they understood which forms required the different answers. The foreman answered that they were in doubt as to which set of answers to insert in the two sets of questions. The justice then directed the officer to ask the jury this question, which the officer took down in writing and read to the jury: ' Do you understand which questions you are to answer by nominal damages, and which the other way ? ' The foreman said to the officer in reply that they did not clearly understand this, and were in doubt about it.

" The judge's house was about nine miles from the court house by the usual route of travel, and between two and three hours would have been occupied in going to the court house and returning at that time of night. If the jury had been kept over night, they would have been unfit for service the next day.

" In view of this, after consideration, the judge directed the officer to take the jury to the room in the court house at Cambridge where the telephone was. This room is the County Treasurer's office, and at that hour of the night was unoccupied. This was done. All the members of the jury were taken there together by the officer, and no other person except the jurors and the officer was present.

" The foreman then in the hearing of all the members of the jury stated to the judge by telephone that the jury had agreed upon the amount of damages, and were about to fill in the findings, but they were not sure which papers required the amount they had agreed upon as damages, and which papers were designed for the nominal amount, and did not clearly remember which papers the judge had stated were for the amount to be found as damages and which for the nominal amount. The foreman made no statement as to the amount agreed upon as damages, and the amount was unknown to the judge. The foreman made no other statement to the judge.

" The judge directed the foreman to read to him over the telephone in the hearing of the jury each of the forms, and said forms were so read to the judge by the foreman over the telephone in the hearing of the jury ; and the judge as the same

were read designated which forms were intended for the damages found and which were intended for the nominal damages, by saying, ' That form is for the amount the jury finds' and ' That form is for nominal damages' as the forms were read, and the designation so made by the judge was repeated to the jury by the foreman. The judge heard over the telephone this repetition, made by the foreman to the jury. The forms designated by the judge for the damages found by the jury and for nominal damages were the same he had previously designated, as above stated, but the judge made no comment or explanation in regard to them, nor any statement except to point out by the language above used which were the forms for the damages found by the jury and which were for nominal damages. No one was present with the jury except the officer in charge. The jury then returned to their room under the charge of the officer and completed filling out the forms, and they were filled out, and were signed by the foreman, sealed in the usual manner, and the next morning were returned into court by the jury, and the verdict was then affirmed.

" No conversation other than the above took place over the telephone. The jury were within hearing of everything said by the foreman, and the foreman repeated to the jury everything said by the judge, and no direction, statement, explanation or ruling was made or given or language used by the judge, in any way referring to or bearing upon the questions to be passed upon by the jury in the case, nor any explanation of the issues nor of the meaning of them."

The petitioners filed a motion for a new trial, founded on this communication with the jury, and at the hearing upon it presented the following requests for rulings :

" 1. If after the case was committed to the jury and after and during an adjournment of the court in the absence of counsel, the presiding justice communicated with the jury or some member or members thereof the petitioners are entitled to a new trial.

" 2. If after the case was committed to the jury and after the court had adjourned and during such adjournment in the absence of counsel the presiding justice instructed the jury or any member thereof in reference to the question of damages the petitioners are entitled to a new trial.

" 3. If after the case had been committed to the jury, in the absence of counsel, during an adjournment and not in open court the presiding justice explained to the jury or any member or members thereof all or any of the questions which had been left to them the petitioners are entitled to a new trial.

" 4. If the officer in charge of the jury after the case was committed to them delivered to or read to the jury or any member or members thereof any communication from the presiding justice or any other person which might in any way influence their verdict the petitioners are entitled to a new trial.

" 5. The officer had no right to communicate with the jury in the manner and form in which he did.

" 6. The presiding justice had no right to communicate with the jury in the manner and form in which he did."

" The court gave so much of request numbered 1 as relates to communication by a justice with some member or members of the jury, and so much as may relate to any communication affecting the deliberations of the jury or their action, or to any ruling, statement or comment upon any question they are to pass upon, or any language used with reference thereto, but declined to give the remainder of the request or to rule that any communication between the justice and the jury would entitle the petitioners to a new trial. The court gave the second, third and fourth requests and declined to give the fifth and sixth, and denied the motion, and the petitioners excepted so far as their requests were not given."

In dealing with these requests the presiding judge ruled, in substance, that a communication with some member or members of the jury, under the circumstances stated in the first request, would be unlawful, although a communication with the jury as a body might be justified. He also made a similar distinction between a communication affecting the action or deliberations of the jury, or relating to any ruling, statement or comment upon any question they are to pass upon and a communication for some other proper purpose. The direction that he gave was merely as to the proper way to exhibit and preserve their verdict on paper, after they had decided upon it, so that there might be no mistake in presenting it to the court. The communication was, in principle, not very different from the common direction, given through

the officer to a jury who agree in the night time, to seal up their verdict and bring it into court the next day. *Commonwealth* v. *Heden*, 162 Mass. 521. It went a little further in telling them how to use the machinery that had been provided for that purpose, but the information was limited to assistance in the use of this machinery, and did not touch any matter that could affect the substance of the verdict itself, before it was agreed upon.

There are grave objections to any communication with a jury made as this was. The possibility of misunderstanding or mistake involved in it is such as should preclude the adoption of it, unless in cases of great emergency; but the facts stated in this case make it certain that no miscarriage of justice has resulted. Limited as this communication was to a collateral direction as to the manner of using the papers supplied for the reception of the verdict, it does not require us to set the verdict aside.

If there had been no communication from the judge, and the jury had made a mistake in filling the blanks in the paper furnished them, the mistake might have been corrected after their return of the verdict to the court. *Levine* v. *Globe Street Railway*, 177 Mass. 204. *Spencer* v. *Williams*, 160 Mass. 17, and cases cited. *Twomey* v. *Linnehan*, 161 Mass. 91, 95. The present case is covered in principle by *Moseley* v. *Washburn*, 165 Mass. 417, where a similar communication was made by the judge to a jury, through the officer who had them in charge, and the verdict was upheld.

*Judgment on the verdict for the large sum.*

*C. F. Jenney & S. Robinson*, for the petitioners.

*R. G. Dodge*, Assistant Attorney General, *& A. Marshall*, for the Commonwealth.