(Oct. 31, 1921.   No. 2503.)

## DIAMOND X LAND & CATTLE CO. v. DIRECTOR GENERAL OF RAILROADS et al.

(Rehearing Denied March 14, 1922.)

### SYLLABUS BY THE COURT

(1)   In the absence of special contract, the market value of property at the place of delivery or location controls, if there was such value there on the day in question.     P. 678

(2)   Market value, where such exists, affords the most satisfactory evidence, but value may be established notwithstanding that no market value exists.     P. 679

(3)   In the absence of an offer of proof, action of the trial court in excluding evidence cannot be attacked on appeal.     P. 679

(4)   Where requested instructions have been covered by

Diamond X Land & C. Co. v. Director Gen. 27 N. M. 675

the court's charge to the jury, there is no error in refusing them.                                                                P. 679

(5) The duty devolves upon the shipper, where such shipment is accompanied by caretakers, to feed and water such animals if the railroad company stops its trains at suitable places and affords an opportunity of so doing to the shipper, and, even though the railroad company may unload the animals for the purpose of feeding and watering the same where facilities for such purpose do not exist, it is the duty of the shipper to render such assistance as is possible in caring for the animals and mitigating the damage which may be sustained.                                P. 680

(6) Railroad companies whose lines and facilities were taken over by the railroad administration established by the President in December, 1917, under the act of Congress (U. S. Comp. St. § 1974a), were not liable for the acts of omission or commission of the agents and servants of the Director General in operating such railroads.          P. 682

Appeal from District Court, Chaves County; Brice, Judge.

Action by the Diamond X Land & Cattle Company against the Director General of Railroads and the Atchison, Topeka & Santa Fé Railway. Judgment for plaintiff, and defendants appeal. Affirmed as to the Director General, and reversed as to the railway company, with instructions to dismiss.

W. C. Reid, George S. Downer, and E. C. Iden, all of Albuquerque, for appellants.

L. O. Fullen and W. A. Dunn, both of Roswell, for appellee.

### OPINION OF THE COURT

ROBERTS, C. J. Appellee sued the Director General of Railroads and the Atchison, Topeka & Santa Fé Railway to recover damages for injury to animals shipped by it and others from a station near Hagerman, N. M., on the line of the Santa Fé Railway to Interior, S. D. Three or four parties shipped from the same point of origin to Interior,

S. D., at the same time, and all suffered similar damages. The claims of the other shippers having been assigned to the appellee, all were joined in this suit and are included in the recovery. Upon a trial, the jury returned a verdict upon which judgment was entered against the appellants in the sum of $13,090, to review which this appeal is prosecuted.

Various elements entered into the claimed damages, such as needless delay in transportation, permitting the cattle to go without food and water, refusing to stop the trains at suitable places for unloading and feeding the cattle, jerking and rough handling occasioned by insufficient motive power, unloading at Murdo, S. D., in a snowstorm, where there were no adequate facilities for caring for the cattle, and other similar complaints.

The court instructed the jury to find the cattle's market value in the condition and at the time they should have arrived at Interior, S. D., and appellant claims that this instruction was erroneous, as there was no evidence before the jury upon the question of the market value of cattle in the condition in which these cattle were at the time of shipment. Two witnesses testified that they knew the cattle in question in Chaves county before their shipment, knew their condition, and were familiar with market conditions at Interior, S. D., and knew the market value of cattle at that place; that the market value of the same grade and class of cattle as those shipped at Interior at the time of the arrival of the cattle in question was a stated sum, classifying the cattle and value at different prices according to age. Appellant contends that the witnesses in saying that they knew the market value of the same grade or class of cattle at Interior were referring only to ages and breed, such as Herefords, Short Horns, etc. The trial court evidently assumed, and

in this we think it was justified, that the witnesses were speaking of the grade and condition with reference to the flesh and physical condition of the cattle. If they were right in their interpretation as to what the witnesses meant, they could have developed their view of the matter upon cross-examination.

[1] "In the absence of special contract, the market value of property at the place of delivery or location controls, if there was such value there on the day in question." 13 Eng. of Ev. p. 570.

These witnesses established the fact that there was a market value for cattle of the same grade and class as those in question at the time of delivery, and evidence of such value was, of course, competent and proper.

It is next argued that the court was in error in using the market value as one factor and the intrinsic value as another factor for the determination of the amount of damages. The jury were told in the instructions to first take the market value of the cattle in the condition they should have arrived, and next the intrinsic value in the condition they did arrive, and assess the damages at the difference. If the cattle had a market value in the condition they arrived at their destination, this would have been the proper measure of value; but the witnesses testified that on account of the injuries inflicted upon the cattle and the bad condition in which they arrived, there was no market value for them at Interior, S. D. Proof was then offered as to the intrinsic value of the animals in that condition. We fail to see how value could have been otherwise established at the point of destination.

"The market value of live stock at the place of destination is a measure of damages for loss of stock where mar-

ket exists there, otherwise the intrinsic value." Sutherland on Damages, § 93e.

[2] The rules for the ascertainment of value which require where possible proof of the market value and otherwise proof of the intrinsic value or actual value are all designed to serve as a yardstick by which to measure the loss which the complainant sustains by reason of the tort or wrong of the defendant. Market value, where such exists, offers the most satisfactory evidence, but value may be established notwithstanding that no market value exists. Sutherland on Damages, § 919.

[3] It is next complained that the court erred in refusing to allow appellants by way of rebuttal to show the intrinsic value of the cattle at the origin of shipment. Appellants sought to prove by a witness the value of the cattle at the point of origin of shipment. Objection to the question was interposed and sustained. Appellants have shown no injury by the ruling of the trial court in excluding evidence of the intrinsic value of the cattle at point of shipment, because they failed to state to the court what they expected to prove the intrinsic value to be by the offered evidence. In the absence of an offer of proof, the action of the court in excluding the evidence cannot be attacked on appeal. Ins. Co. v. Mercantile Co., 13 N. M. 241, 82 Pac. 363; State v. Goodrich, 24 N. M. 660, 176 Pac. 813; State v. Anderson, 24 N. M. 360, 174 Pac. 215. Suppose, for example, that in answer to the question appellant expected to prove an intrinsic value less than that established at point of destination. There could have been no injury by the exclusion of the evidence, consequently we cannot say the appellants were prejudiced by the ruling of the court.

[4] It is next argued that the court erred in refusing to give to the jury requested instructions Nos. 5 and 7, to the effect that mere proof of delay

in transportation of the cattle was not in itself proof of negligence, but that the burden was upon the plaintiff to show that such delays might reasonably have been avoided, and that such delays must have been caused by the defendant's negligence, and that the same was true as to the jerking and jarring or rough handling of the cattle. The court charged the jury generally that the burden of proof was on the plaintiff, and before it could recover it must establish by a preponderance of the evidence all the facts necessary to its recovery; also, that plaintiff must establish the several acts of negligence charged in the complaint before it could recover therefor, including negligent delays and negligent jerking and rough handling of the cars. The requested instructions having been covered by the court's charge to the jury, there was no error in refusing them. The same is true as to requested instructions Nos. 2 and 6, dealing with the nonliability of the carrier for damage due to the act of God, the elements, the authority of law, or the act or default of the shipper, in so far as a statement of the law was required by the evidence.

[5]   It is also contended that the court erred in not giving tendered instructions Nos. 10, 11, and 12, which stated in effect that it was the duty of the owner of the cattle, or his agents who accompanied the shipment, to load and unload the same, feed and water them, and care for them while in transit. In so far as the tendered instructions correctly stated the law, they were covered by instructions 10 and 11 given by the court. These instructions were as follows:   .

"No. 10.   The owners or their agents who accompanied the shipment of cattle in suit would be required to supply the cattle with feed and water necessary to keep them in proper condition, provided the defendants stopped their trains for such purposes at points where adequate facilities for feeding and watering the animals and obtaining the feed and water for them existed, but otherwise no such obligation

would devolve upon the plaintiffs or their agents and the defendants would be responsible for all damage negligently occasioned by reason of said animals not being properly fed and watered under such conditions.

"And I further charge you that if you find from the evidence in this case that the defendants assumed the responsibility of feeding and watering such animals at any place or places where adequate facilities existed for so doing, then and in that case the plaintiffs would be relieved from the responsibility as to such points and such responsibility devolves upon the defendants."

"No. 13. It was the duty of the caretakers in charge of such cattle to lend all reasonable assistance in caring for same, and when unloading at the town of Murdo it was their duty to give such assistance as they reasonably could in caring for said cattle at the time of such unloading and while unloaded at said town, and all loss occasioned by fail-ure on the part of such caretakers to give such reasonable assistance as they could in caring for such live stock cannot be charged to the negligence of the defendants, and if you find from the evidence that the loss or injury to any of said live stock resulted from the failure of said caretakers in so caring for the live stock, you will exclude such losses from the damages, if any, which you may find for plaintiff."

Appellants in their supplemental brief have called to the attention of the court the opinion of the Circuit Court of Appeals (Eighth Circuit) in the case of A., T. & S. F. Ry. Co. v. Merchants Live Stock Co., 273 Fed. 130, recently decided, in which the court in considering a similar question said:

"On the foregoing, the contention is made by plaintiff in error that the shipper, through its caretakers, was under the legal duty to assist in unloading, reloading, feeding and wa-tering the cattle at Amarillo and Strong City—indeed, that these were primarily duties of the caretakers—and that the court should have expressly so instructed the jury, and that the caretakers could not be permitted to judge for themselves whether they would or would not lend assistance under the surrounding circumstances, and that plaintiff's damage should be diminished to the extent that the assistance of the caretakers would have lessened the loss. The general man-ager forbade the caretakers to give any assistance at Strong City, and there is testimony that they gave none at Amarillo, although a part of the damage claimed was dependent on the manner in which the cattle were unloaded, reloaded, and fed and watered at those points. The court, in the fore part of an instruction (No. 24), declared the law, as now and then contended for by plaintiff in error, that is, that it was the duty of the caretakers to assist in unloading, feeding, wa-tering, resting and reloading the cattle, that if the care-

takers, by using their reasonable diligence and the means at their command, could have prevented or diminished the damage done, then any such damage which might have been so prevented, or the amount in which such damage might have been diminished, the defendant was not responsible for. But the court added to this declaration of law the following: 'And it is for you to say from all the evidence in this case bearing upon that point, whether or not, under all the circumstances as they existed at the time, the use of reasonable diligence on the part of the caretakers and the means at their command required them to assist in the unloading, feeding, watering, resting and reloading the cattle at Strong City.' The jury was instructed before argument, and the excerpt was added by the court after the case had been partly argued. The defendant saved its exception to the instruction as thus changed. We are of opinion that the instruction is right without the addendum—it declared its duty as a matter of law; and that with it, it was wrong and prejudicial for two reasons: First, it left the matter of duty a question of fact to be settled by the jury, and second, the instruction thus became self-contradictory. There was no issue on the fact as to the question of duty."

Instruction No. 13 made it the duty of the caretakers to render such assistance as they could at Murdo, S. D., where the cattle were unloaded, and it was contended that there were no facilities provided for caring for the animals, and that all loss occasioned by failure on the part of such caretakers to give such assistance should be deducted from the damages awarded, if any. The instructions given stated the law correctly and covered the subject; hence there was no error in refusing the requested instructions.

It is urged that the court committed error in excluding the testimony of C. O. Brown, a witness for the appellants, who was called as an expert to give his opinion as to whether part of the cattle involved were in shipping condition as to flesh and strength. There are two answers to this contention: First, no statement was made to the court as to what the witness would testify to in answer to the question; and, secondly, the witness later answered the question in full.

[6] Prior to entering upon the trial, a motion

was interposed by the railway company to dismiss the suit as to it on the ground that at the time the injuries occurred, and at the time the suit was instituted, its lines of railway were under the control of and being operated by the United States, by and through the Director General of Railroads pursuant to the act of Congress in that regard, which was denied. The court was in error in not sustaining the motion. Railroad companies, whose lines and facilities were taken over by the railroad administration established by the President in December, 1917, under the act of Congress (U. S. Comp. St. § 1974a), were not liable for the acts of omission or commission of the agents and servants of the Director General in operating such railroads. This is settled by decisions of the Supreme Court of the United States. See Northern Pacific Railroad Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897; Missouri Pacific Railroad Company v. Ault, 255 U. S. —, 41 Sup. Ct. 593, 65 L. Ed. 647.

The case will be affirmed as to the Director General of Railroads and reversed as to the Atchison, Topeka & Santa Fé Railway, with instructions to the trial court to enter an order of dismissal as to the railroad company, and it is so ordered.

RAYNOLDS and PARKER, J., concur.