146 P.2d 175

**STATE v. BEAL.**
No. 4790.

Supreme Court of New Mexico.
Feb. 14, 1944.

G. L. Reese, Sr., of Roswell, for appellant.

Edward P. Chase, Atty. Gen., and C. C. McCulloh, Asst. Atty. Gen., for appellee.

THREET, Justice.

Appellant was tried and convicted upon an information charging him with the murder of Stanley Brown. As a result of the verdict, he was sentenced to death. An appeal is prosecuted to this court, assigning numerous errors. They will be considered here, so far as is necessary, in the order presented in appellant's brief.

The first assignment of error is as follows:

The district court erred in overruling appellant's motion to set aside the verdict of the jury and grant a new trial in the cause upon the following grounds:

a. Because the trial judge, after the jury had retired to deliberate upon its ver-

dict, and without the knowledge or consent of the appellant or his counsel, sent to the jury room the following state's exhibits in evidence in the cause, to wit:

b. The map or plat of the scene of the homicide, identified as state's exhibit 1.

c. The piece of pipe, identified as state's exhibit 2.

d. The pistol with which the deceased was shot, and the holster for same, identified as state's exhibit 3.

e. Five cartridges and shells in an envelope, identified as state's exhibit 4. All exhibits were received in evidence.

f. Articles of clothing consisting of bib overalls and jumper, worn by defendant at the time of his arrest, and a pair of gloves in defendant's possession at that time, and identified as state's exhibit 5. The last named exhibit was never offered or received in evidence.

Appellant's argument, as to his first assignment of error, may be divided, for convenience, into three points, as follows:

1. The district court erred in sending to the jury room, after the jury had retired, the map or plat of the scene of the homicide, identified as state's exhibit 1; the piece of pipe, identified as state's exhibit 2; the pistol, with which the deceased was shot, and the holster for same, identified as state's exhibit 3, and the cartridges, identified as state's exhibit No. 4.

2. That the sending of the exhibits to the jury room by the court, after the jury had retired to deliberate on its verdict, without the knowledge or consent of appellant, or his counsel, was a communication between the court and the jury prohibited by law.

3. It was error for the jury to receive into the jury room during its deliberation the articles of clothing not in evidence, worn by appellant at the time of the homicide.

Under point one of the first assignment of error, appellant contends that it was prejudicial error for the court to permit the jury to receive, in the jury room, while it was deliberating upon its verdict, state's exhibits one to four inclusive and cites as authority on this proposition 1941 Comp., Sec. 19-823; Territory v. Eagle, 15 N.M. 609, 110 P. 862, 30 L.R.A.,N.S., 391, Ann. Cas.1912C, 81; State v. Babcock, 22 N.M. 678, 167 P. 275, and State v. Lord, 42 N.M. 638, 84 P.2d 80. Appellant states that the decision in State v. Lord, supra, did not operate to extend the rule as announced by this court in Territory v. Eagle, supra, and State v. Babcock, supra, relative to the right of either litigant to have exhibits introduced in evidence, other than those mentioned in 1941 Comp., Sec. 19-823, to be taken and considered by the jury during its deliberation upon its verdict. That the extent of the rule in State v. Lord, supra, is that, while it was error to permit the confessions to be taken into the jury room, and be considered by the jury in its deliberation upon the verdict, the error was harmless and not prejudicial. That the

rule there announced was applicable only to the facts in that case and did not extend or overrule the rule announced by this court in Territory v. Eagle, supra, and State v. Babcock, supra.

■ The contention of appellee is to the effect that, since State v. Lord, supra, the rule in this State is that it is within the sound discretion of the trial court as to whether exhibits, introduced in evidence, other than those mentioned in 1941 Comp. Sec. 19-823, supra, shall be permitted to go to the jury room and be considered by the jury in the course of its deliberation upon the verdict. That when, in the exercise of its discretion, the trial court permits such exhibits to go to the jury room and be considered by it while deliberating upon the verdict, there is no error, unless appellant is able to show that the trial court .abused its discretion and prejudice resulted to appellant therefrom. Whatever may be said as to the merits of the contentions advanced by appellant and appellee relative to the holding of State v. Lord, supra, for reasons hereinafter stated, we find it unnecessary to decide. We might say, in passing, that the sending of exhibits, other than those mentioned in the Statute, 1941 Comp. Sec. 19-823, supra, to the jury room to be considered by the jury during its .deliberation, is a dangerous practice and should not be done, if at all, until the interested parties have had an ample opportunity to be heard upon the question.

The most serious question is to be found in point two of appellant's first assignment of error. Appellant asserts, in substance, in his motion for a new trial that after the jury retired to consider its verdict, without the knowledge or consent of appellant or his counsel, the official court reporter gathered up all exhibits identified and introduced as evidence, consisting of a map, state's exhibit 1, a piece of pipe, state's exhibit 2, a pistol and holster, state's exhibit 3, and five cartridges and shells, state's exhibit 4, and delivered them to the sheriff, who took them to the jury room to be used and considered by the jury while deliberating upon its verdict. The district attorney, who tried the case, in answer to the motion, admitted that the exhibits mentioned in appellant's motion were taken to the jury room and remained there while the jury was deliberating on its verdict, but denied that the presence of the exhibits in the jury room was prejudicial to appellant.

Upon the hearing of appellant's motion to set aside the verdict and for a new trial, appellant's counsel offered himself as a witness and after being duly sworn, testified in support of motion, among other things, as follows: "I would like to further state that, as attorney for the defendant, I had no notice or knowledge that the exhibits reached the jury room until a day or two after the verdict of the jury was returned."

During the hearing upon the motion for a new trial, a colloquy arose between the court and counsel for the appellant as to how these exhibits reached the jury room. The court, premising its statement on its recollection of what the record would show,

stated: "As the jury was retiring, I instructed the reporter to deliver to the jury the exhibits which had been introduced in evidence and, if any exhibits were admitted to the jury that had not been introduced, it was through the inadvertence of the reporter. A complete stenographic record was kept of the proceedings of the trial, with the exception of the arguments, and any admissions in the trial and the remarks made to the court shall be hereafter set out. As to the instructions and any admissions or objections will appear in the court reporter's transcript."

Appellant's counsel stated that he did not hear the court tell the reporter to get the exhibits or what instructions, if any, the court gave the court reporter but, if he had known anything about such a proceeding, he would have interposed an objection in behalf of his client.

 The veracity of neither court nor counsel is here involved. It is purely a matter of correctly recalling what transpired, yet so grave a case as this may not be decided upon the memory of those present at the trial. We are bound to consider the case, as presented here, upon the record made in the trial of the case.

The question of the court's communication with the jury, after it had retired to deliberate upon its verdict, was before this court in State v. Costales, 37 N.M. 115, 19 P.2d 189, 191, wherein it is said:

" * * * 'No record was made of the incident or any exception taken, and the Court considered it quite harmless at the time. * * *'

"The high character of the trial judge is an adequate guaranty against any conscious act of unfairness, but his suggestion that the absence of a record would be a sufficient answer to the point is potent in its persuasiveness of the soundness of the doctrine that the place for the judge is on the bench when he communicates with the jury, in order that there may be a record, and for the other good reasons pointed out in State v. Hunt, 26 N.M. 160, 189 P. 1111, 1115."

It will be noted that the trial judge, in commenting on what had taken place when the exhibits were sent to the jury room, intimated that the record would reveal that the exhibits were ordered delivered to the jury in open court and in the presence of appellant and his counsel, but upon an examination of the record, we find it silent upon this point. The fact that the trial judge instructed the court reporter to deliver the exhibits to the jury in open court, and in the presence of appellant and his counsel, and with their knowledge, is a matter in dispute between counsel for appellant and the trial judge. Since we are bound to consider this case upon the record as presented here, and in the absence of a showing to the contrary, we are constrained to hold that the sending of exhibits to the jury room, for its consideration in deliberating upon the verdict, was without the knowledge and consent of appellant or his counsel. Having arrived at this con-

clusion, would the sending of said exhibits to the jury room, without the knowledge and consent of appellant or his counsel, amount to an improper communication between the court and the jury requiring a reversal of this case?

As to what constitutes an improper communication between the court and the jury, this court, in State v. Hunt, 26 N.M. 160, 189 P. 1111, 1113, held the following to be improper: "'After the argument to the jury of Clifton Mathews, who made the closing argument for the defendants, the court announced a recess; thereupon, as the jury were leaving the jury box and before the court had retired from the bench, Juror N. M. Ross approached the judge of the court in the courtroom and stated that the jury desired to have the shoe in question opened so that the interior thereof might be discovered and so that it might be disclosed whether or not the toe of the said shoe contained blood; that at the time said request was made the jury were in the act of leaving the jury box, the judge of the court had not left the bench, and there were several bystanders within hearing distance of the said juror, Ross, at the time he made said request, and the judge of the court thereupon stated to said juror that, if the jury desired that this be done, the proper course to follow was for one of the jury to rise before the court in the jury box in open court and make such request; that at the time said request was so made by said juror, N. M. Ross, and at the time the judge of the court made his statement to the said juror, N. M.

Ross, in reponse to said request, the defendants were not, nor was either of them, and counsel for defendants were not, nor was either of them, within hearing so far as the court is aware of said juror, N. M. Ross, or of the said court, or of the said colloquy which occurred between the said juror, N. M. Ross, and the court. Counsel for the state thereupon, or immediately thereafter, knew and became aware that such request had been so made, and that such response had been so made by the court, as above recited, but, so far as the court is aware, neither the defendants, nor either of them, nor their counsel, nor either of said counsel, heard said request, or the response of the court thereto, or knew of the same. Thereafter, and after all argument of counsel to the jury had ended and closed, and before the court had instructed the jury, said juror, N. M. Ross, in open court, from the jury box, requested the court to allow said shoe, State's Exhibit D, to be so cut open. Thereupon the state, through its district attorney, assented to the same being done, and thereafter the defendants, through their counsel, assented to the same, and thereupon, after such assent in open court, the said shoe was by the sheriff, under the direction of the court, cut open, so that its interior, which was not previously disclosed to view, could be seen, and when said shoe was so cut open, and the interior thereof so exposed to view, there was visible in that part of said interior so exposed to view, at and around and near the bullet hole passing through the sole of said shoe, a considerable quan-

tity of dry blood, or of a substance having the appearance of dry blood. Said shoe, State's Exhibit D, was thereupon passed into the jury box, and in such condition was viewed and examined by the members of the jury, and thereupon, and immediately thereafter, the court proceeded to instruct the jury and to give them the case for consideration of their verdict.' "

In Outlaw v. United States, 5 Cir., 81 F. 2d 805, it was held to be an improper communication between the court and the jury upon the following facts: The court charged the jury orally and the instructions were taken down by the stenographer. After the jury had considered the case for some time, it communicated with the judge through the bailiff that it desired a copy of the instructions given it. The judge had the stenographer write the instructions out and sent them to the jury room. The appellant and his counsel were present in court but did not know of these communications until the verdict had been returned and the jury discharged.

In Little v. United States, 10 Cir., 73 F. 2d 861, 864, 96 A.L.R. 889, it was held that the following facts constituted an improper communication between the court and jury: The jury addressed a note to the judge, apparently asking for the indictment, certain exhibits and a copy of the court's instructions. In chambers, defendant's counsel objected to the · exhibits going to the jury and to any further instructions. The trial court properly refused to act in chambers in the absence of the defendant. The jury was called back into open court and the following proceedings were had:

"The Court: Gentlemen of the jury, the court has your note asking for a copy of the indictment, which has already been furnished you, and your request for the letters pertaining to the different counts of the indictment. Is that correct?

"Foreman of the Jury: Yes, sir.

"The Court: And for the court's instructions. The court will direct the letters, which include enclosures and the letters pertaining to each indictment, sent up to the jury, and instruct the stenographer to attend in the jury room and read the instructions in their entirety from beginning to end, with no repetition of any part, or emphasis on any part, and, at the completion of the reading, to retire, to all of which exceptions will be saved. Is there anything more, gentlemen? If not, then you may retire."

After the jury had retired the court reporter was sent to the jury room to read the instructions to the jury. It was held that the sending of the reporter to the jury room and there having the stenographic notes of the instructions read to the jury, out of the presence of the defendant, constituted a communication between the court and jury, prejudicial to the rights of the defendant.

We hold, in the case at bar, that the transmission of the exhibits to the jury by the court through the agency of the court reporter or the sheriff, as the case may be, was a communication between the

court and jury, and when done without the presence of appellant and his counsel, and without their knowledge and consent, it was error. It now becomes necessary to determine whether this communication was prejudicial to the rights of appellant.

Appellee states in his answer brief that: "Appellant contends that the court's direction to the reporter to take the exhibits to the jury room was a communication between the court and the jury, prohibited by law, since the defendant and his counsel were not aware of the same. However, defendant and his counsel, were both present, and could have heard the directions"; and argues that, even though this constituted a communication between the court and the jury, out of the presence and without the knowledge of appellant and his counsel that prejudice will not be presumed, and the burden of showing that he was prejudiced by such communication is on appellant. And, in the absence of such a showing, the trial court did not abuse its discretion, denying appellant's motion for a new trial.

 In this appellee is in error. In State v. Hunt, supra, we said:

"It is elementary that in a felony case the accused must be personally present at every stage of the trial. If any material step in the trial is taken in his absence and a conviction results, it must be set aside. This rule has been applied in many cases. * * *

"As a part of the same doctrine, it is uniformly held to be reversible error for the judge to have any communication with the jury, except in open court and in the presence of the accused and his counsel. * * *

"Many cases to the same effect will be found cited in notes to the cases of State v. Murphy, 17 L.R.A.,N.S., 609, and Lewis v. Lewis, L.R.A.1915D, 719. These cases are practically unanimous upon the proposition that any communication between the judge and the jury respecting the case, had after the cause has been submitted and not in open court and in the presence of the parties, is reversible error. And this upon the ground that any communication under such circumstances is improper, and that the party in order to secure a setting aside of the verdict was not required to show prejudice, but only the fact that there was such unauthorized communication. There is no more reason for saying that it is improper for the trial judge to communicate with the jury after it had retired to consider of its verdict not in open court and in the presence of the parties than for him to have such communication with the jury about the case while on trial and prior to such retirement. Whatever fact the juror desires to communicate to the trial court relative to the case then on trial should be made from the jury box in open court and in the presence of the parties and likewise the answer of the judge thereto."

It is argued by appellee that the rule in State v. Hunt, supra, has been greatly relaxed by the later decisions of this court. We do not understand that the relaxation

of the rule as laid down in State v. Hunt, supra, affects the burden of proof but when it has once been established that there has been such a communication, the important question is whether prejudice has resulted, and if it satisfactorily appears that such communication was harmless a new trial will not be granted.

■ In the case at bar there is nothing in the record to indicate that the communication did not affect the verdict. The burden was upon appellee to establish this fact and having failed to meet this requirement the presumption of prejudicial error must prevail.

In State v. Clements, 31 N.M. 620, 249 P. 1003, 1008, this court again considered the rule in State v. Hunt, supra, and speaking through Mr. Justice Watson said: "That decision involved a communication between the judge and a juror relating to a proceeding in the case. It was held that, in such a case, prejudice need not be shown. The decision was based upon the right of the accused to be present during all proceedings. It is urged that the strict rule adhered to in the Hunt Case, supported, as was there indicated, by practically unanimous authority, is inconsistent with the comparative liberality of the authorities above referred to when dealing with communications with outsiders. However that may be, it is evident that the two classes of cases involve different principles and that the results have been reached from different considerations. The great influence of a communication from the judge regarding the case is manifest. * * * We cannot admit, therefore, that it is the law of this state that the bare fact of an unauthorized and improper communication necessitates in all cases a new trial, even in capital felonies. When it appears that there has been such communication, the important question is whether prejudice has resulted. Such a communication certainly requires explanation, not only to secure the accused in his rights, but to maintain the court's authority. But if it satisfactorily appears that the communication was harmless and had no effect on the verdict, the rights of the accused do not require, and public interest does not permit, the granting of a new trial." See also State v. Costales, supra.

The record is silent on what transpired between the reporter and the jury, or the sheriff and the jury, at the time the exhibits were delivered to the jury room. It is true that no harm may have resulted from such a communication, but on the other hand if the reporter, or the sheriff, as the case may be, who delivered the exhibits to the jury room, had innocently made the remark to the jury that the court sent the exhibits into the jury room for its consideration while deliberating on its verdict; or that the court said that the jury would need the exhibits in arriving at its verdict; or that it should examine the exhibits again, it may readily be seen that a great injustice would be done the appellant and irremediable prejudice would result therefrom.

We can see no difference in the trial court, out of the presence of appellant and his counsel, and without their knowledge, sending the exhibits to the jury room, than in having the instructions which had been given orally, transcribed and sent to the jury room. The result would be the same. In Outlaw v. United States, supra [81 F.2d 808], it is said: "We have most concern in ruling upon the last question, whether there should be a reversal because of the written charge sent to the jury. The charge was delivered orally and taken down by the ·stenographer. The jury, after prolonged consideration of the case, made known to the judge, presumably through the bailiff, that they desired a copy of the charge given them. The judge had the stenographer to write it out, checked it, and sent it to the jury room. Appellant and his counsel were present in court, but did not know of these communications until the verdict had been returned and the jury discharged. The copy of the charge, signed by the judge and filed with the clerk on the same day the verdict was, is in the record. No exception was taken to the oral charge. No contention is now made that the written one differs from it or is in anything exceptionable. The bald contention is that the judge should have held no communication with the jury except in open court with the knowledge of the accused and his counsel. * * * We hold with the contention of appellant that the jury should have been recalled from the jury room and recharged by reading the former charge in the presence of appellant and his counsel who had remained in court and had not by a voluntary departure waived any right. It is a misconduct for the judge to hold any important communication with the jury regarding the case unless openly and with opportunity to the accused to be present and to object. Private communications, however harmless in themselves, may open the way to abuses and may destroy the confidence of the accused and of the public in the fairness of the trial. By the great weight of authority they constitute error, especially in a criminal trial."

In Little v. United States, supra, the court said:

"But sending a stenographer into the jury room, there to read, in the absence of the defendant and his counsel the charge of the court, stands in very different stead. No harm may come from it, it is true; but on the other hand, a mistake in the reading of a shorthand symbol which defense counsel would instantly detect, an unconscious or deliberate emphasis or lack of it, an innocent attempt to explain the meaning of a word or a phrase, and many other events which might readily occur, would result in irremediable prejudice to the defendant. Underneath that phase of it lies the proposition that no one should be with a jury while it is engaged in its deliberations. The jury system is founded upon the proposition that disinterested jurors will hear the evidence in open court, and upon that evidence and that alone, deliberate among themselves until a verdict is reached. * * * To permit various persons, under

one pretext or another, to be with the jury in its deliberations is to open the door to grave abuse and to strike directly at the heart of the system. Without exception, as far as we are advised, such procedure has been held to be error. * * * Nor should there be any communication between the court and jury except in open court. * * *

"We conclude that where the entire record affirmatively discloses that an error has not affected the substantial rights of an appellant, it will be disregarded. But where error occurs which, within the range of a reasonable possibility, may have affected the verdict of a jury, appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict. So to hold would, as a practical matter, take from a defendant his right to a fair trial. In this case we know nothing of what went on while the stenographer was in the jury room; it is entirely possible that a shorthand character was misinterpreted; emphasis plays an important role in transmission of ideas by word of mouth, and the difficult injunction of the court to avoid any emphasis is no assurance that there was none. What else may have occurred, we do not know. No outsider has any business in the jury room; much harm could result, and that is enough. The record failing affirmatively to disclose that no prejudice did result, the verdict cannot stand."

■ In the case at bar the record fails to disclose that no prejudice resulted from the communication of the court with the jury. The burden being upon appellee to establish this fact and it appearing that such burden has not been discharged, it was error for the trial court to deny appellant's motion for a new trial. State v. Hunt, supra. See also, Fillippon v. Albion Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853; Dodge v. United States, 2 Cir., 258 F. 300, 7 L.R.A. 1510; Sargent v. Roberts, 1 Pick., Mass., 337, 11 Am.Dec. 185; Moseley v. Washburn, 165 Mass. 417, 43 N.E. 182; Whitney v. Commonwealth, 190 Mass. 531, 77 N.E. 516; State v. Costales, supra; Raab v. State, 62 Okl.Cr. 361, 71 P.2d 773, and Lewis v. State, 73 Okl.Cr. 172, 119 P. 2d 91.

We find it unnecessary to pass upon the third point of appellant's first assignment of error, as the question presented is not likely to occur upon a retrial of this case.

This opinion might well end here, as what has been said requires a reversal of this case, but other questions are presented which are likely to arise upon a retrial of the case and, with that in mind, we proceed to consider appellant's second assignment of error, to-wit: The district court erred in sending to the jury room, after the jury had retired and without the knowledge and consent of appellant or his attorney, the court's instructions to the jury.

Two propositions are advanced by appellant under this point, viz: First, that the sending of the instructions to the jury room, after it had retired to deliberate on its verdict, without the knowledge and con-

sent of appellant or his counsel, constituted an improper communication between the court and jury; and second, that permitting the instructions to go to the jury room without the request of either appellee or appellant was error.

As to the first proposition under the second assignment of error, what we have said under point two, of the first assignment of error, disposes of this question, and we do not deem it necessary to elaborate further.

Under the second proposition appellant cites 1941 Comp. Sec. 42-1113, which reads as follows: "The instructions given, whether as requested or of the court's own motion, shall be in writing, unless written instructions be waived by the parties. Except where instructions, whether oral or written, are waived, the judge in all cases shall charge the jury before the argument of counsel. Upon request of either party the written instructions shall be permitted to go to the jury room."

He states that, in the absence of a request from either appellee or appellant, it was error for the court to permit the instructions to go to the jury room. It is admitted that no such request was made.

In approaching this question, it will be interesting to review the background leading up to the promulgation of this rule. 1941 Comp., Sec. 19-823, supra, provides: "When the jury retires to consider its verdict it shall be allowed to take the pleadings in the cause, the instructions of the court, and any instruments of writing admitted as evidence, except depositions." This was the law of the State until 1933, when after passage of L.1933, c. 84, it became a rule of the court by adoption of the following omnibus rule: "All now existing statutes relating to pleadings, practice and procedure in judicial proceedings in all courts of New Mexico shall, from and after the taking effect of the Act of the Eleventh Legislature, approved March 13, 1933 (L.1933, c. 84), known as Senate Bill No. 130, remain in effect and have full force and operation as rules of court, unless and until otherwise ordered. (Adopted April 13, 1933; effective June 9, 1933.)" Rule 1, Rules of Pleading, Practice and Procedure, 38 N.M. viii.

Under this section of the foregoing statute it was mandatory upon the court to permit the jury upon retiring to take the instructions to the jury room. It was held, however, in Cunningham v. Springer, 13 N.M. 259, 82 P. 232; Id., 204 U.S. 647, 27 S.Ct. 301, 51 L.Ed. 662, 9 Ann.Cas. 897, that the failure of the jury to take the instructions with it to the jury room did not constitute grounds for a new trial, absent a timely objection.

Sec. 19-823, supra, from and after the passage of chapter 84, Laws 1933, supra, became a rule of court, and remained so until June 1, 1934, when this court, under its rule making power, pursuant to chapter 84, Laws 1933, supra, promulgated Sec. 70-104, 38 N.M. xvii, Rules of Pleading, Practice and Procedure, supra. "The instructions given, whether as requested or of the

court's own motion, shall be in writing, and shall be read by the judge to the jury, in civil cases before, and in criminal cases after, the arguments of counsel. They shall not be taken to the jury room." It will be observed that the amendment reversed the mandatory provisions of the rule, as to permitting the instructions to go to the jury room. Under the rule before amended, it was mandatory on the court to permit its instructions to be taken by the jury upon retiring; while under the rule as amended, it was mandatory that the court see to it that the instructions should not be taken to the jury room. It had no discretion in either case.

The present rule, Sec. 42-1113, supra, which became effective March 1, 1937, relaxed the practice to the extent of providing that the jury be instructed before argument and that upon request of either party the written instructions should be permitted to go to the jury room. This rule is mandatory. There is no discretion in the trial court to do other than the rule provides. Upon the request of either party, the court must permit the instructions to go to the jury room. In the absence of such a request, the court has no discretion to exercise, and the instructions must not be sent to the jury room. We hold that it was error for the court, where neither appellee nor appellant has so requested, to permit the instructions to go to the jury room.

An interesting question as to the circumstances under which, if at all, such error would be deemed prejudicial might be here discussed and passed upon. However, we see no point in so doing, since after what we have said it seems unlikely that, upon a retrial, the instructions will again be sent to the jury room except as authorized by the rules.

There is no merit in appellant's third and fourth assignments of error, which have been argued together and will be so considered here. It is contended that the court erred in giving instructions Nos. 16 and 16½. These were only part of the instructions given by the court in support of appellant's claim of self defense. The theory of appellee was that appellant armed himself for the purpose of entering into the fatal encounter with the deceased. An examination of the evidence amply supports this theory if believed by the jury. Instructions to the jury must be considered as a whole, and if the entire charge presents the law of the case fairly to the jury, it is sufficient. We have considered the instructions complained of and have also read and considered the instructions as a whole. We are satisfied that they, when considered as a whole, fairly and correctly inform the jury upon the law applicable to the case. This is all that may be required by appellant. State v. Ellison, 19 N.M. 428, 114 P. 10; Victor American Fuel Co. v. Melkusch, 24 N.M. 47, 173 P. 198; Hubert v. American Surety Co., 26 N.H. 365, 192 P. 487; Federal Reserve Bank v. Upton, 34 N.M. 509, 285 P. 494.

It is next urged, in appellant's assignment of error No. 5, that the court

erred in refusing to give to the jury appellant's requested instruction No. 3, which was based upon appellant's theory of self-defense. From an examination of the instructions given by the court, it appears that the jury was instructed fully upon this phase of the case, it is a well established rule that where requested instructions have been covered by the court's charges to the jury, there is no error in refusing them. Clark v. Carlisle Gold Mining Co., 5 N.M. 323, 21 P. 356; Chavez v. Territory, 6 N.M. 455, 30 P. 903; Territory v. Edie, 6 N.M. 555, 30 P. 851; Territory v. West, 14 N.M. 546, 99 P. 343; Diamond X Land & Cattle Co. v. Director General of Railroads, 27 N.M. 675, 205 P. 267; Snodgrass v. Turner Tourist Hotels, 45 N.M. 50, 109 P.2d 775.

Appellant in his sixth assignment of error complains of the ruling of the trial court in sustaining objections to a conversation between appellant and a witness by the name of Horace Sullins. He urges that the conversation sought to be elicited from the witness Sullins was part of the res gestae. The trial court sustained objections to this testimony on the grounds that it was a self serving declaration. After the trial court had sustained an objection to the witness Sullins testifying, appellant made his tender in the record as to what he expected to prove by this witness, as follows: "The defendant offers to prove by this witness that the first conversation he had with the defendant as soon as he arrived on the scene was that the defendant shot the deceased, or had it to do because the deceased was coming at him with a pipe that has been introduced as evidence in this case and was prepared to strike him on the head with it and that he had to shoot him to protect himself, and that the defendant also showed the pipe to the witness and said that was the weapon Brown had in his hands. And that it was less than five minute after the homicide after this conversation occurred." The background for the introduction of this evidence may be found in the testimony of the witness Horace Sullins who testified in substance as follows: That he was at his place at the time of the homicide; that he had carried some hay out from town for Mr. Beal and unloaded it in front of his house and told him he would have to go home and promised to have supper with him; that he was in the field at the time Mrs. Beal came to his place; that he and Mrs. Beal started down to appellant's home when he saw appellant going from the well house to the (appellant's) house, when appellant motioned to him and said "hurry up"; that he did not know of the homicide until he arrived at the well house where appellant was. That he was the first man at the scene after the homicide. Then the witness gave the following testimony: "Charlie was about one-half way between the well house and the house, when he passed going to the house he motioned again and said 'hurry up' and I got to walking a little faster and he came out with a chair cushion or something, I didn't know exactly what it was at that time, he had it in his hand and was going back .to the well house. He motioned and said 'hurry up' again so I hurried up and left Mrs. Beal.

We were coming down the road together. When I got there Charlie was standing on the east end of the pump house * * *".

The testimony of appellant is as follows: "He fell kind of more on the right side with his feet due east and his head west with this hand laying like that and this one across him, and when he started staggering, falling, I stuck my pistol back in the holster and walked up and looked at him and his head was laying on some pebbles or rocks. I turned around and walked straight to my house. I got about half way and I looked angling across I saw my wife and Mr. Sullins coming down the road. I said, 'hurry up; come on down.' By that time I had passed the toilet which is about half way from the well to the house and I again beckoned to him. I said 'hurry up and come on.' I walked to the door and picked up a cushion that was about the size of a pillow, but not soft. It was homemade; the wife had made it to use when I was on the tractor occasionally. So I picked the pillow, run my hand under his head and I slipped the pillow under him and started fanning him with my hat. At that time Mr. Sullins walked up and I said * * *"

This question has been before the court on several different occasions. In State v. Buck, 33 N.M. 334, 266 P. 917, 918, we said:

"The particular principle involved here is that an utterance made impulsively and under the strain and immediate influence of an exciting or terrifying occurrence may be so inherently truthful that the ordinary sanctions and tests may be dispensed with. It is a sound doctrine, and one easily grasped. The difficulty is in its application. What are the tests of spontaneity? Wigmore, after examination of the judicial expositions, admits but three legitimate limitations to the doctrine. They are:

"First. 'There must be some shock, startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting.'

"Second. 'The utterance must have been before there has been time to contrive and and misrepresent, i. e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance.'

"Third. 'The utterance must relate to the circumstances of the occurrence preceding it.'"

In State v. Sanford, 44 N.M. 66, 97 P.2d 915, 918, this court, in quoting from Bradberry v. State, 22 Tex.App. 273, 2 S.W. 592, said: "Were the statements res gestae? 'There are no limits of time within which the res gestae can be arbitrarily confined. They vary, in fact, with each particular case. * * * This distinguishing feature of declarations of this class is that they should be the necessary incidents of the litigated act,—necessary in this sense: That they are part of the immediate concomitants or conditions of such act, and are not produced by the calculated policy of the actors. They need not be coincident as to time, if they are generated by an excited feeling which extends, without break or let, down from the moment of

the event they illustrate. In other words, they must stand in immediate causal relation to the act, and become part, either of the action immediately producing it, or of action which it immediately produces.' Whart. Crim. Ev. (8th Ed.) §§ 262, 263. 'The test is, were the declarations the facts talking through the party, or the party's talk about the facts? Instinctiveness is the requisite; and when this obtains, the declarations are admissible.' "

The record is silent as to the state of mind of appellant at the time the witness Horace Sullins arrived at the scene of the homicide. The only testimony touching upon this is that of appellant himself. He testified on cross-examination as to his mental state at the time the officers arrived at the scene of the crime, which was about ten minutes after the homicide:

"Q. Did you cry when you shot Stanley Brown ? A. No.

"Q. When the officers got there were you excited or nervous? A. No.

"Q. Quite calm and collected. A. Naturally I was nervous. I am always nervous.

"Q. You knew everything that went on there? A. I did."

As to the amount of the time that had transpired between the shooting of the deceased and the arrival of the witness Horace Sullins, the record is uncertain. But time alone is not the controlling factor. The admissibility of the testimony depended more upon the surrounding circumstances than on time. State v. Buck, supra. Testing the declarations sought to be elicited by appellant from the witness Horace Sullins by the rule announced in State v. Buck and State v. Sanford, supra, can we say that it was the result of such nervous excitement as to render it spontaneous and unreflecting? We think not. After appellant shot the deceased, he walked over and looked at him and saw that his head was laying in some rocks, he then went to his house for the purpose of getting a pillow to place under the head of the deceased. On the way to the house, he saw the witness Sullins for the first time after the homicide and was close enough to him to urge him to hurry up and come on. At that time, he made no statement to the witness Sullins as to what had happened at the time of the shooting. He again met the witness Sullins, as Sullins testified, on his way back from the house and again urged the witness to hurry up and come on. At this time he made no statement to the witness as to what had happened when the deceased was killed. The trial court in sustaining appellee's objections to this tender of proof stated: "No, they had already met and he told him to hurry up. I don't believe the statement would be admissible. Whatever he said to him when he first met him when he said 'hurry up,' if he said anything else, but not at the pump house. * * * He had already met this man up there further away from the place; if the defendant had told him there, I would let it in."

We think the trial court was correct in so holding. The declarations sought to be proved by the witness Sullins were not such as to bring them within the doctrine of spontaneous and unreflecting utterance of appellant as a result of some shock sufficient to produce a nervous excitement. We therefore hold that this assignment of error is not well taken.

Appellant's seventh assignment of error challenges the sufficiency of evidence to sustain the verdict of the jury. Since this case must be reversed for a new trial, we do not pass upon this question.

For the reasons herein stated, the judgment will be reversed with instructions to grant a new trial and

It is so ordered.

SADLER, C. J., and MABRY, BICKLEY, and BRICE, JJ., concur.