19 P.(2d) 1048

## STATE v. FERNANDEZ.

### No. 3771.

Supreme Court of New Mexico.

Feb. 27, 1933.

Rehearing Denied March 27, 1933.

George R. Craig, of Albuquerque, for appellant.

E. K. Neumann, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for the State.

WATSON, Chief Justice.

The information charged Gregorio Fernandez, together with Paul Mares, John Lane, and Simon Vega, with having conspired with Manuel Valencia, to rob the Bond-Sargent store at Grants. Mares and Lane pleaded guilty, Vega and Fernandez were convicted, and the latter has appealed.

Pursuant to the alleged conspiracy, Mares, Lane, and Vega, together with Valencia and one Rucker, actually made an armed assault upon the store. Rucker was the apparent leader. The officers, warned in advance, were in readiness in the store when the bandits entered. A gun fight ensued in which Rucker was killed, and the other four were wounded, Valencia fatally.

Appellant was not present at the overt act. He was arrested two or three miles outside of the village, where he was waiting with a car. His conviction was on the theory that his part in the conspiracy was to aid in the escape.

The first contention arises upon the following record; the witness being the sheriff of Valencia county, and the questioner the district attorney:

"Q. What I want you to give to the jury is an idea as—if he can—you testified you saw these men pass the window and enter the store. I want to know how much time elapsed from the moment they entered the store until the shooting stopped. A. I wouldn't say the time but it went so rapidly I believe it didn't take over three or four minutes. * * *

"Q. What happened to Manuel Valencia in these three or four minutes? A. Manuel Valencia at the time this thing happened there, they went back from the door. When my partners fire the shots the officers and when those two inside of the store were down I went out and also the other officers, they turn around to the corner of the store and went behind a car that was there. Then I told them. I leveled a gun to their direction and says 'Raise your hands if you do not want to die.' They throw the pistol and raise their hands and then I give orders not to fire anymore.

"Q. Did you say pistol or pistols? A. One pistol.

"Q. Who threw the pistol? A. Manuel Valencia. * * *

"Q. When they put up their hands as you testified what was Manuel Valencia's condition? A. When I ordered them to raise their hands he had the mask over his face yet and he had some blood on one side of his face, on the right side.

"Q. And did he remain standing or sitting or what was his position there? A. He was standing and raised his hands. He and Simon Vega.

"Q. Let's direct our attention for the moment to Manuel Valencia. What did he then do or what happened to him? A. I told him that he was under arrest and he says 'all right, I am pretty near done'.

"Q. Did he continue standing or lie down? A. He was standing and he said 'I am pass-ed through with a bullet and I am going to tell you—'

"Q. Was he still standing when he told you that? A. Yes sir.

"Q. How long was that when he told you what you are going to testify, how long was that after the first shooting or starting of this affair? A. That thing finish very soon. Everything went by very rapidly.

"Q. Was this what he told you immediately after you told him to throw up his hands? A. Yes sir, when I arrive to where he was he told me that he was through with a bullet hole.

"Q. Tell what he said to you?

"Mr. Craig: We object to any statements or admissions made by the co-defendant Valencia at this time after he had been placed under arrest as stated by the witness, not made in the presence of the defendant Fernandez; any statement he may have made about Fernandez for the reason that statements or admissions made by a co-defendant after the conspiracy had ended is not material and not admissible as binding upon the other co-defendant. I assume that is what he wants him to tell.

"The Court: Overrule the objection.

"Mr. Craig: Exception.

"Q. You may state what—I want to confine that conversation to what, if anything, was said about these defendants or either of them by you or Manuel Valencia at that moment. What if anything was said at that moment between you and Manuel Valencia

with reference to these defendants here or either of them? A. I did ask him if he had any other partners and he told me that Gregorio Fernandez was on the outside of the town toward Gallup—

"Mr. Craig: I move that that answer be stricken and taken from the jury on the ground that it was statements made by a codefendant after the conspiracy, if any, had ended, not made in the presence of the defendant Fernandez.

"The Court: Overruled.

"Mr. Craig: Exception.

"Q. After he told you this, state whether or not you went out there? A. Yes sir I picked up two officers and went over there. * * *

"Q. When you got out there where Manuel Valencia had indicated to you, did you find anybody? A. The car was there, yes sir.

"Q. Anybody in it? A. Gregorio Fernandez was there."

We do not understand appellant to have objected that the existence of a conspiracy or the membership of a conspirator is not to be proven by the extrajudicial declarations of a coconspirator; merely that a conspirator is not bound by such declarations made after termination of the conspiracy.

In Territory v. Neatherlin, 13 N. M. 491, 85 P. 1044, 1045, it was admitted to be the general rule that "acts or declarations of a time subsequent to the completion of that for which the alleged conspiracy existed" are not "competent evidence."

■ The state contends, however, that the declaration was a spontaneous utterance under stress, and thus binding on appellant, even if the conspiracy be deemed to have ended with the frustration of its object; citing "Criminal Law," 16 C. J. § 1318, p. 663.

Appellant, without questioning the doctrine, which we may therefore assume to be sound, replies only that the incriminating declaration was not spontaneous, since it was evoked by the sheriff's question. No authority is cited to the proposition that a question asked will be necessarily or conclusively fatal to spontaneity, and we know of no such rule. The tests of spontaneity were recently set forth by this court in State v. Buck, 33 N. M. 334, 266 P. 917. None of the essentials seems to be lacking here. So we sustain the trial court's ruling.

■■ It is contended that the court erred in overruling an objection to questions propounded by the district attorney on redirect examination of the above-named Mares, who was used as a state's witness. It was developed on the cross-examination that this witness was of the opinion, from appearances which he described, that, in the car on the way to the intended robbery, appellant not being present, Valencia was coercing defendant Vega with a pistol. The district attorney then instituted a series of questions implying that, though he had had several conversations with Mares preparatory to his being a witness, this fact had not been previously disclosed. Finally, the counsel for appellant objected that the state was attempting to im-

peach its own witness. The district attorney, claiming surprise, the objection was overruled.

In the first place, we do not perceive how appellant could have been prejudiced by this ruling. The evidence which surprised the state related solely to defendant Vega. In the second place, the point is here presented as if there had been an impeachment of the witness. If there had been, we may doubt if it would have been error. State v. Hite, 24 N. M. 23, 172 P. 419. If the ruling be deemed to have sanctioned impeaching evidence, the district attorney did not take advantage of it. He merely employed a latitude of examination in the effort to obtain admissions from the witness himself. 28 R. C. L., "Witnesses," § 228.

█ The trial court having sustained the state's objections to questions propounded to the witness Guntherson, as to conversations with Rucker, it was incumbent upon appellant's counsel to make a tender of proof. None having been made, we cannot determine whether the rulings were erroneous or prejudicial. State v. McCracken, 22 N. M. 588, 166 P. 1174, State v. Anderson, 24 N. M. 360, 174 P. 215, State v. Goodrich, 24 N. M. 660, 176 P. 813.

What we have just said applies to the ruling excluding answers to questions propounded to the witness Baca. Or, if a leading question, immediately following the ruling, be deemed to disclose what it was proposed to prove, it does not affect appellant's case at all. It affects the codefendant Vega, whose counsel asked the questions and took the exceptions.

Error is assigned on the court's refusal to instruct that the statement of Valencia to the sheriff, hereinbefore set forth, was not to be considered as bearing upon the guilt or innocence of the appellant. State v. McDaniels, 27 N. M. 59, 196 P. 177, is cited, but does not remotely support the contention, which is obviously without merit. It can amount to no more than a renewal of the contention that the statement was erroneously admitted.

█ There was substantial evidence to support the verdict. This, with what we have already said, disposes of the contention that the court erred in overruling the motion for new trial.

We conclude that the judgment should be affirmed, and it is so ordered.

SADLER, HUDSPETH, and BICKLEY, JJ., concur.

ZINN, J., did not participate.