469 P.2d 160

STATE of New Mexico, Plaintiff-Appellee,

v.

Wendell D. GUNTHORPE, Defendant-Appellant.

No. 374.

Court of Appeals of New Mexico.

Feb. 20, 1970.

Rehearing Denied April 13, 1970.

Certiorari Denied May 12, 1970.

**516**

Lorenzo E. Tapia, Thomas L. Marek, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Santa Fe, Ray Shollenbarger, Asst. Atty. Gen., for appellee.

## OPINION

SPIESS, Chief Judge.

Defendant, Wendell D. Gunthorpe, was charged in the District Court of Bernalillo County by an indictment in two counts of the crimes (1) attempt to commit a felony, namely, murder, § 40A–28–1, N.M.S.A. 1953, and (2) aggravated assault, § 40A–3–2 (A), N.M.S.A.1953. Trial to a jury resulted in a conviction as to both counts.

Appeal has been taken from the judgment upon the verdicts. Some of the points relied upon for reversal relate to both counts of the indictment. Others are applicable only to count one. Facts which we consider of importance to this decision will be considered under the points to which they relate.

At arraignment defendant entered a plea of not guilty, but reserved his right to challenge the indictment, and by motion thereafter presented he sought unsuccessfully to quash the indictment on the ground that the grand jury was not legally constituted and for that reason the indictment was voidable. Error is asserted in the denial of the motion. Insofar as material here, the motion alleges that the judge failed to comply with statutory requirements relating to the drawing and selection of the grand jury, and also failed to observe the constitutional provision (Art. II, Sec. 14) as to the number of persons required to constitute the grand jury panel.

The record discloses an order calling a grand jury for the September, 1968 term of the District Court of the county. The order provides:

"* * * that the names of 75 persons be drawn by this Court and the Clerk hereof at 10:30 A.M. on the 17th day of September, 1968, and that from the list of said persons twelve (12) Grand Jurors and 12 Alternates be chosen and qualified in open Court prior to the convening of the Grand Jury."

Upon the appointed day the Judge and Clerk of the District Court drew 75 names from the jury box. A list was made disclosing the order in which the names were drawn. The record shows that of the 75 names so drawn, eight were not served by the sheriff; ten, although served, failed to appear at the appointed time and place, and thirty-four were excused from service by the judge; further, that twelve persons were accepted and qualified as the Grand Jury and at the same time twelve other persons whose names were drawn were accepted as alternate grand jurors. How the 12th alternate juror was selected is not shown.

The twelve persons selected for service upon the Grand Jury were those first drawn from the jury box excepting persons not served, those who did not appear and those who were excused by the Judge. The objections to these proceedings are: (1) that the trial court drew an excessive number of names from the jury box, (2) the trial court erroneously failed to record the reasons for excusing thirty-four persons from jury service, and (3) the Judge erroneously empaneled twelve alternate grand jurors in addition to the twelve empaneled for the Grand Jury.

Section 19–1–18, N.M.S.A.1953, now repealed, but effective at the time, provides:

"Not more than ninety [90] days before the first day of any term of each district court to be held in any county of this state, when the judge of the district court shall deem it necessary that grand and petit juries should be summoned for service at such term, it shall be the duty of the judge of the district court with

the assistance of the clerk of the court, and in the absence of the district judge the clerk of the court in the presence of the sheriff, and in the presence of such citizens as shall desire to be present to draw from the jury box a sufficient number of names to constitute the petit jury at the ensuing term of court. The district judge may in his discretion draw or cause to be drawn from grand jurors, six [6] names as talesmen in excess of the number required by law to constitute a grand jury, and not exceeding twelve [12] names as talesmen in excess of the number necessary to constitute a petit jury. A list of the names so drawn shall immediately be made up and certified by the judge, and in his absence by the clerk under his hand and seal, and filed in the office of the clerk and recorded in the jury book, and a notation also made upon the jury list as prepared by the jury commission and recorded in the jury book, opposite the name drawn, of the date of the drawing and the jury for which drawn, and the list so made up with the names thereon shall constitute the names for the regular venires for grand and petit juries. The slips containing the names so drawn shall be sealed up in an envelope, properly endorsed and preserved until the jurors shall be regularly empaneled for such term of court. The names so drawn shall be set down upon the list in the order in which they are drawn from the jury box, and if a number more than sufficient for the organization of the respective juries shall be summoned by the sheriff, the juries shall be made up of the qualified persons present, in the order in which their names are drawn from the jury box and appear upon the venires, except as to such persons who may have been or who may be excused by the court for good cause shown to the court. At least ten [10] days before the drawing of the names from the jury box, as provided by this section, notice of the time and place of drawing the same shall be given by the clerk of the court by posting such notice on the court-house door of the county, or publishing the same in some newspaper in the county. The venires for any jury may be made returnable upon such day of the term of the district court as the judge thereof in his discretion shall determine. * * * "

Article II, § 14 of the Constitution of New Mexico, provides that a Grand Jury shall be composed of such number not less than twelve as may be prescribed by law. This number has not been enlarged by legislative action.

■ The question as to whether a failure to comply with the requirements of the statute through drawing an excessive number of names from the jury box is fatal to the legality of the jury, requiring quashing the indictment, depends upon whether the statute relating to the number of names to be drawn is mandatory or merely directory. In determining whether words of a statute are mandatory or directory, the intention of the Legislature is controlling. State ex rel. Sun Co. v. Vigil, 74 N.M. 766, 398 P. 2d 987 (1965); Ross v. State Racing Commission, 64 N.M. 478, 330 P.2d 701 (1958). 4 Anderson, Wharton's Criminal Law and Procedure, § 1698 (1957), contains the following statement relating particularly to the selection of juries.

"Statutory provisions which relate to the number and qualifications of jurors, or which are designed to secure impartiality or freedom from unfair influences, are ordinarily deemed to be mandatory; while those which prescribe mere details as to the manner of selection or drawing are usually regarded as directory. Deviation from a mandatory statute or one intended to prevent fraud and unfounded prosecutions is usually fatal and renders the grand jury illegal and its indictments null and void. On the other hand, when the provisions of the statute are merely directory, and particularly when the chief purpose of the prescribed method is to distribute equally the burden of jury service, a departure from that method does not, in the absence of fraud

or prejudice to the interests of the party who questions the regularity of the selection, render the grand jury illegal. * * * "

A case not strictly in point but bearing upon the question involved is State v. Leatherwood, 26 N.M. 506, 194 P. 600 (1920). This decision involving statutory provisions for the selection of petit jurors held that:

"Statutory provisions for the selection of jurors are usually construed by the courts to be directory, unless a contrary intent is clearly manifest by the statute, and, being directory, an immaterial departure from the method prescribed does not vitiate the trial or invalidate the jury. The present act authorizes the judge of the district court to excuse jurors from service for good and sufficient reasons, but the court necessarily determines the sufficiency of the reasons justifying the discharge. But the authorities generally hold that, where a competent and impartial jury is secured in a criminal case, a conviction will not be reversed because of some inadvertent failure to comply with every directory provision of the jury law, in the absence of a showing of prejudice against the accused. * * * "

See State v. Williams, 76 N.M. 578, 417 P. 2d 62 (1966); also, People v. Lieber, 357 Ill. 423, 192 N.E. 331 (1934). That the members of the grand jury were composed of the names drawn from the jury box in the presence of the persons designated by statute, were properly sworn and qualified for jury service and were wholly impartial as between the State and defendant is unquestioned, nor is there any showing of fraud or prejudice to defendant. The method of selection of the members of the grand jury, as has been pointed out, was not by choice, but was the result of chance. Since the portion of the statute involved is directory only, deviations from its provisions without a showing of fraud or prejudice to the defendant do not furnish a basis for quashing the indictment.

■ We find no merit to the contention that the failure of the judge to record reasons for excusing a number of persons from jury service constitutes a ground for quashing the indictment. Defendant has not cited nor has our search revealed a statute or other rule of law imposing such duty upon the judge. No sufficient reason has been advanced warranting the imposition of such duty by this court upon the trial judge. We also note that no prejudice is shown to have resulted to defendant from such failure.

■ As a final attack upon the indictment, defendant contends that the trial court committed error in empaneling the so-called alternate grand jury. It is not shown that any of the members of the alternate grand jury actually served or participated in returning the indictment against defendant. Consequently, no prejudice is shown.

We further observe that the grounds upon which a grand jury panel could then be challenged were restricted by § 41–5–2, N.M.S.A.1953, (now repealed):

"A challenge to the panel may be interposed for one [1] or more of the following causes, only:

"First. That the requisite number of ballots were not drawn from the grand jury box of the county;

"Second. That the drawing was not had in the presence of the officers designated by law;

"Third. That the drawing was had more than ninety [90] days before the term of court."

None of the grounds advanced by defendant fall within the language of this statute.

Under two points defendant challenges the admissibility of certain evidence offered by the State in support of the count charging defendant with attempt to commit murder of his divorced wife, Mauricette Gunthorpe. Each of these points, in substance, questions the admissibility, under the res gestae doctrine, of statements

claimed to have been made by the victim, Mauricette Gunthorpe, to the witnesses, a Mrs. Barros and Officer G. L. Miller. The testimony material to a consideration of these points is summarized as follows. Mrs. Barros testified that while she was engaged in a telephone conversation with Mrs. Gunthorpe she heard the doorbell ring in the victim's home. The victim "must have opened the door," and upon returning to the telephone said to Mrs. Barros, "I have to hang up, my husband is—[here]."

Officer Miller testified that during his investigation of a reported shooting in the area, he entered the victim's home and discovered her lying upon the floor. When the officer was asked as to the victim's condition at the time he observed her, he said: "She was bleeding very profusely from about the upper portion of her head and neck area. There was a large pool of blood completely around her and it was running, making a small riblet [sic] along the edge of a throw rug in the home and large—like I stated, large amount of blood completely surrounding her." The officer was then asked if he had said anything to the victim. He answered, "I asked her 'who shot you,' and she said 'my husband.' "

It is generally held that the determination of the admissibility of statements under the res gestae doctrine is a matter within the sound discretion of the trial court and its determination in the absence of clear abuse will not be disturbed upon appeal. Garrett v. Howden, 73 N.M. 307, 387 P.2d 874 (1963). The Supreme Court has, on a number of occasions, considered problems relating to the admissibility of statements under the res gestae doctrine. Some of the decisions which have dealt with the problem are: Lance v. New Mexico Military Institute, 70 N.M. 158, 371 P.2d 995 (1962); State v. LaRue, 67 N.M. 149, 353 P.2d 367 (1960); State v. Godwin, 51 N.M. 65, 178 P.2d 584 (1947); State v. Beal, 48 N.M. 84, 146 P.2d 175 (1944); State v. Sanford, 44 N.M. 66, 97 P.2d 915 (1939); State v. Stewart, 34 N.M. 65, 277 P. 22 (1929).

The following observation in State v. Godwin, supra, we think, merits consideration here.

" * * * The principle involved is that an utterance made impulsively and under the immediate influence of a terrifying occurrence may be so inherently truthful that the ordinary sanctions and tests applied to assure verity may be dispensed with. A spontaneous exclamation uttered under such circumstances is illustrative. The test, as quoted with approval by the court from Wigmore in State v. Buck, 33 N.M. 334, 266 P. 917, 918, is as follows:

" 'First. "There must be some shock, startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting."

" 'Second. "The utterance must have been before there has been time to contrive and misrepresent, i. e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance."

" 'Third. "The utterance must relate to the circumstances of the occurrence preceding it." '

"Other cases in which we have dealt with the question of spontaneous exclamations which we believe support the trial court's action in admitting the child's statement here, are State v. Stewart, 34 N.M. 65, 277 P. 22; State v. Raulie, 35 N.M. 135, 290 P. 789; State v. Sanford, 44 N.M. 66, 97 P.2d 915; State v. Beal, 48 N.M. 84, 146 P.2d 175.

"These decisions lay down no hard and fast rule of admissibility but determine same by the special circumstances of each case. It is apparent from them that the element of spontaneity is not to be determined by time alone. It is sufficient for the statement to be substantially contemporaneous with the shocked condition, but not necessarily with the startling occurrence. And in line with

the weight of authority we held in State v. Fernandez, 37 N.M. 151, 19 P.2d 1048, that although the statement is in answer to a question, it is admissible. See Dallas Railway & Terminal Co. v. Burns, 1933, Tex.Civ.App., 60 S.W.2d 801, 802, where the court said: 'If it is otherwise within the rule, it is not rendered inadmissible simply because it is made in response to a question.' "

█ █ We see no error in the ruling of the court with respect to the particular testimony of Officer Miller. Under the circumstances disclosed by the evidence the statement he attributed to the victim was clearly admissible. However, it is our view that the testimony of Mrs. Barros, concerning the statement made to her by the victim over the telephone, was not properly admissible in evidence. There is nothing in the record which would preclude or tend to preclude the idea of forethought, nor is there a showing that the statement attributed to the victim was spontaneous. Spontaneity is generally considered an essential factor governing the admissibility of utterances sought to be admitted in evidence as part of res gestae. See State v. Godwin, supra; State v. Villalobos, 6 Ariz.App. 144, 430 P.2d 723 (1967). Although the denial of defendant's motion to exclude the particular statement in Mrs. Barros' testimony from evidence was error, it was nevertheless harmless and would not warrant granting a new trial in view of the overwhelming evidence of defendant's guilt. See State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App.1969).

█ Defendant asserts under a further point that the prosecutor in his final argument improperly commented upon defendant's failure to testify. It is fundamental that the Fifth Amendment protects a defendant against compulsory self-incrimination; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), and forbids comment by a prosecutor upon de-

fendant's failure to testify. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

Appellee argues that the prosecutor's comment was invited by defense counsel's closing argument and hence defendant waived error because of the prosecutor's comment. State v. Paris, 76 N.M. 291, 414 P.2d 512 (1966).

From our observation of the record the remarks of the prosecutor to which defendant objects are clearly impermissible and in the absence of waiver would constitute reversible error. The record discloses that defendant objected to the prosecutor's remarks and in a discussion with the court, out of the hearing of the jury, the trial court indicated that the prosecutor's remark was invited by defendant's argument and in substance overruled defendant's objection.

For some unexplained reason the record fails to include defendant's argument to the jury. Defendant does, however, plausibly argue that certain remarks of the prosecutor lend strength to his contention that no remarks of his were properly to be construed as inviting the prosecutor's comment.

█ Absent a record of defendant's argument we cannot presume error; consequently, no reviewable question is presented. Richardson Ford Sales v. Cummins, 74 N.M. 271, 393 P.2d 11 (1964).

It is finally contended that the court erred in denying defendant's motion to sever counts 1 and 2 of the indictment and grant separate trials as to each count. Defendant argues that " * * * one trial on both charges would hold him out to the jury as being an habitual criminal, and would confound him in presenting his defenses and would confuse the jury in following them. * * *"

█ The granting or denial of a request for severance is largely a question of pro-

cedure and is addressed to the sound discretion of the trial court. Its action will not be disturbed on review unless an abuse of discretion is shown which results in prejudice to the defendant.

The following rule stated in State v. Brewer, 56 N.M. 226, 242 P.2d 996 (1952), although involving misdemeanors, is applicable here.

> "The trial judge in passing upon an application to sever or elect exercises a broad and a sound judicial discretion in determining whether to grant the request. The exercise of that discretion depends in a large measure on the special circumstances of each case. Id. Wharton, 397, § 345; 27 A.J. 692, § 134 (Indictments and Informations); Pointer v. United States, 151 U.S. 396, 14 S. Ct. 410, 38 L.Ed. 208. He must counterbalance benefits and advantages to the one side as against the dangers of legal prejudice to the other and finally rule whether a proper case for joinder is made out. * * *"

While as argued by defendant, some potential harm may result from a joinder of offenses, the mere denial of a request for severance is not a basis for reversal unless abuse of discretion and prejudice is shown. There has been no such showing here. In State v. Brewer, supra, the court said: "The fact alone that evidence of two separate crimes is before the jury does not afford proof of legal prejudice. * * *"

We see no reversible error in denying defendant's request for severance.

We have carefully considered the authorities cited and relied upon by defendant in support of each point presented by him. In our opinion they do not compel a conclusion different than herein expressed.

The judgment should be affirmed.

It is so ordered.

OMAN and HENDLEY, JJ., concur.