584 P.2d 182

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Roger MAESTAS, Defendant-Appellant.**

**No. 3315.**

Court of Appeals of New Mexico.

Aug. 15, 1978.

John H. Lewis, D'Angelo & Farrah, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Charlotte Hetherington Roosen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant was convicted of Aggravated Battery in violation of § 40A–3–5, N.M.S.A. (2d Repl.Vol. 6), and Abuse of Child in violation of § 40A–6–1(C) (1975 Supp.). Defendant appeals. We affirm as to Aggravated Battery and reverse as to Abuse of Child.

During the week of November 28 to December 3, 1976, a 25 year old mother and her three year old son, the victims in this case, lived with defendant in his home in Alcalde, New Mexico. Over the course of several days during that week the mother [victim] was severely beaten by someone.

The subject of the controversy is the identification of the person who committed aggravated assault upon the victim.

At about 5:00 p. m. in the late afternoon of December 3, 1976, the victim, with the assistance of defendant, walked from defendant's home across the road to the home of defendant's mother to obtain transporta-

tion from Alcalde to Embudo Clinic. Upon arrival at Embudo Clinic, the victim was medically checked and then taken by ambulance to the Espanola Hospital, arriving at about 5:40 p. m. The doctor in attendance began his examination at about 6:00 p. m. He found the victim's condition extremely serious and at the shock level. She was confused, disoriented, with multiple bruises and injuries that covered 75% of her body. She also had a renal failure. The following morning, the victim was taken to the Bernalillo County Medical Center.

The victim was subpoenaed by the State to testify. She did not appear voluntarily. When asked by the State whether defendant had beat her, the victim would either give no response or answer "no." Nor would the victim respond when asked who it was who beat her severely. After the victim testified that defendant did not strike or hit her with an iron pipe or wooden stick of some sort, nevertheless, the following testimony of the victim appears of record:

Q. Roger [defendant] did not hit you?

A. Would you repeat the question?

Q. Sure. Did Roger hit you during the time span we have been speaking of?

A. (No Response)

Q. You can answer yes or no, if you choose?

A. (No Response)

THE COURT: Can you answer the question . . .?

A. No.

* * * * * *

Q. You cannot answer that question, is that what you are telling the jury and the Court, Dorothy; is that right?

A. Yes.

* * * * * *

Q. Do you know who it was that beat you up?

A. I think I do.

Q. Who do you think it was?

A. I can't answer it—the question.

* * * * * *

THE COURT: Why can't you tell, or why can't you answer the question?

A. It's just too hard to answer, Your Honor.

* * * * * *

THE COURT: Do you think you can ever answer the question before this jury?

A. No.

THE COURT: You realize that it's very important that that question be answered, don't you?

A. Yes, Your Honor, but I just can't, it's just too hard to answer

* * * * * *

THE COURT: Tell us who beat you?

A. I don't know.

THE COURT: I am ordering you to do that?

A. I can't Your Honor, because I am confused.

THE COURT: Are you confused between persons or what is the confusion?

A. Yes.

THE COURT: Yes, what?

A. Between persons, people.

THE COURT: That is, are you confused as to who beat you?

A. Yes.

THE COURT: What is the confusion?

A. I don't know, Your Honor.

THE COURT: Do you remember who beat you?

A. I am confused about it.

THE COURT: But, do you remember, now who beat you?

A. (No Response)

THE COURT: You can answer that question. Please answer the question?

A. I can't say who beat me.

THE COURT: Was it one or more persons who beat you?

A. I am confused Your Honor, I am. I am.

THE COURT: Well, explain the confusion to me, to us, to this jury?

A. Well, I—I can't.

THE COURT: You cannot explain the confusion?

A. No.

THE COURT: Do you—Was your son beaten  .  .  .?

A. I never saw anybody beat him up, Your Honor.

THE COURT: Alright.

The State also questioned the victim about her prior statements made to the sister-in-law and the mother, but not about the statements made to the victim's sister. The victim remembered seeing her mother shortly after the victim was beaten and while at the Espanola Hospital. The victim's testimony about that event is as follows:

Q. Do you remember what you told her?
A. I told her a lot of things.
Q. Can you tell us what you told her?
A. I can't.
Q. You do remember these things, though?
A. Yes.

The district attorney then asked the victim what the truth was. The victim's response was:

"I don't know" and that "nothing was true."

Her sister-in-law asked who had beat her up and the victim answered that she did not know. When her sister asked if it was defendant, the victim testified that she answered:

Yes, because I couldn't tell her the truth, the real  .  .  ..

The victim's reticence at trial is explained to some extent by the testimony of a psychologist who treated the victim for 8 or 9 months prior to trial. The psychologist's opinion (tendered out of the presence of the jury) stated that the victim suffered a mental illness or infirmity such as "psychological blocks."

To establish the identity of the victim's assailant, the State produced as witnesses, the victim's sister, sister-in-law and mother.

Sometime that evening, the victim's mother visited the victim in the hospital. The victim's face and feet were black and blue. She was shaking, her lips were trembling, and her eyes were big, frightened and yellow. The mother asked who did it. When the victim indicated she wanted to tell her mother something, her mother bent over to hear, and the victim identified defendant.

At 8:00 p. m. that evening, about 3 hours after the victim's severe beating, the victim's sister-in-law spoke with the victim. At this time, the victim was "clear headed" and coherent in conversation with her sister-in-law and identified defendant.

At 8:00 a. m. the following morning, the victim's sister spoke with the victim at the hospital as preparation was being made to transport the victim to the Bernalillo County Medical Center *due to her renal failure.* At that time the victim identified defendant. The victim told her sister that defendant had beaten her for a week; that the victim made efforts to leave the house, but defendant would not allow it; that defendant hit her with a pipe and a fire log; that he kicked her and threw her outside the house.

Defendant continually objected to the identification of defendant as the person who beat her up.

At the close of the case, the court announced that this was an extremely unusual case; that it permitted critical evidence to be admitted within Rule 804, and if incorrect, then Rule 803 of the Rules of Evidence. Sections 20–4–804, 20–4–803, N.M. S.A.1953 (Repl. Vol. 4, 1975 Supp.).

At the close of the State's case, the State and defendant rested.

On appeal, defendant asserts that the admission in evidence of the witnesses' testimony of prior statements of the victim was inadmissible as hearsay; that the only evidence to sustain defendant's conviction was unreliable and contradicted hearsay testimony; that defendant was denied the right to be confronted with the witnesses; and that there was no evidence that defendant harmed the child.

A. *The testimony of two State witnesses were not admissible in evidence under Rule 803(1) and (2).*

The pertinent part of Rule 803 says:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) *Present Sense Impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or *immediately thereafter.*

(2) *Excited Utterance.* A statement relating to a startling event or condition made *while the declarant was under the stress of excitement* caused by the event or condition. [Emphasis added.]

In this case, the victim is the declarant.

Rule 801(c) defines "hearsay" as "a statement, other than one made by the declarant [victim] while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Under Rule 803(1) and (2), the victim's statements made to her family to identify the defendant as the assailant and to prove the beating by him were hearsay and were not admissible in evidence unless (1) she made her statements while the beating took place "or immediately thereafter," or (2) unless the victim's statements were made while she was under the stress of the excitement caused by the beating she received.

None of the statements were made while the beating took place or within a slight lapse of time thereafter. Neither were the statements made to the victim's sister-in-law at 8:00 p. m., or to the sister, the following morning, under the stress of excitement. The record does not disclose what treatment, if any, the doctor ministered to the victim between 6:00 p. m. and 8:00 p. m. that evening. Nevertheless, there was no evidence from 8:00 p. m. onward that the victim suffered from shock or stress.

*State v. Sanford,* 44 N.M. 66, 97 P.2d 915 (1939) involved a victim who was allegedly poisoned by defendant, her husband. A witness came to the victim's bedside approximately three to three and one-half hours after the poison had been administered. The victim was still vomiting, was pretty sick and did not talk much, but she identified the defendant as the person who had given her some poison. This hearsay evidence was held inadmissible and reversible error. Justice Zinn said:

> The determination of whether or not the particular testimony is admissible must depend upon the particular circumstances of each case. Declarations which are spontaneously and instinctively made are considered by the courts as part of the res gestae. We find no such spontaneous situation here. Mrs. Sanford, under the ministrations of Dr. Doyne, was relaxed and dozing. She did not as at first sight of a close friend following her tragic experience give impulsive utterance to the questioned declaration. Her utterances were not spontaneous exclamations forming a part of and interwoven with the criminal act. They were not made under the immediate strain and influence of an exciting or terrifying occurrence. We cannot sustain the admission of such hearsay testimony under the conditions disclosed by the record in this case without stretching the res gestae rule beyond recognition. [44 N.M. at 74, 97 P.2d at 919.]

*State v. Buck,* 33 N.M. 334, 266 P. 917 (1927) was distinguished by Justice Zinn. In *Buck,* the wife of defendant, after being beaten by defendant, ran two miles to her nearest neighbors, and related what occurred. At the time of trial, the victim refused to testify against her husband, but the testimony of the neighbors was held admissible. Under the "Excited Utterance" doctrine, the time sequence continues as long as the victim is under the stress and strain of the excitement caused by the event of the beating. There is no definite or fixed limit of time. Admissibility depends more on circumstances than on time and each case must depend upon its own circumstances. In the application of the "Excited Utterance" rule, the Supreme Court said:

> . . . Under the immediate influence of a horrible experience, it was her outraged feelings, her physical and mental distress, her desolate and forlorn condition, that spoke. They spoke the truth.

*The name of her assailant was not asked. The question was, "What is the matter?" Yet there rushed to her lips the fact uppermost in her mind, the grievous fact, that it was her husband who had beaten her.* But after reflection and deliberation, conjugal affection has resumed its sway and has overcome resentment. . .
[33 N.M. at 339, 266 P. at 919.]

There is no resemblance between *Buck* and the instant case. *Buck* adopted the Wigmore test for the admissibility of utterances under the stress of excitement. It was stated as follows:

First. "There must be some shock, startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting."

Second. "The utterance must have been before there has been time to contrive and misrepresent, i. e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance."

Third. "The utterance must relate to the circumstances of the occurrence preceding it." [33 N.M at 336–37, 266 P. at 918.]

This test was followed in *State v. Godwin,* 51 N.M. 65, 178 P.2d 584 (1947); *State v. Gunthorpe,* 81 N.M. 515, 469 P.2d 160 (Ct.App.1970); *State v. Beal,* 48 N.M. 84, 146 P.2d 175 (1944); *State v. Fernandez,* 37 N.M. 151, 19 P.2d 1048 (1933).

■ Ofttimes, one of the stumbling blocks that confront us on review is that the determination of the admissibility of statements under the exceptions to the hearsay rule rest within the discretion of the trial court. *State v. Gunthorpe, supra.* The trial court must be careful during trial not to "shoot from the hip" in making a determination. The utterance relating to a startling event, such as a beating, made while the victim is under the stress of excitement caused thereby, must be "so inherently truthful that the ordinary sanctions and tests may be dispensed with. It is a sound doctrine, and easily grasped. The difficulty is in its application." Justice Watson in *Buck, supra.* [33 N.M. at 336, 266 P. at 918.]

"The assumption underlying this exception is that a person under the sway of excitement precipitated by an external startling event will be bereft of the reflective capacity essential for fabrication, and that, consequently, any utterance he makes will be spontaneous and trustworthy." 4 Weinstein's Evidence, 803–80 (1977).

■ Under Rule 803(1) and (2), we hold that the victim's statements made to the sister-in-law at 8:00 p. m., the evening of the beating, and to the sister the following morning, were not an exception to the hearsay rule and were not admissible. The statements made to the mother were admissible.

B. *The testimony of the State's two witnesses was admissible under Rule 804.*

The trial court admitted the testimony of the State's witnesses in evidence pursuant to Rule 804 of the New Mexico Rules of Evidence, [Section 20-4-804, N.M.S.A.1953 (Repl.Vol. 4, 1975 Supp.).] This rule is also an exception to the hearsay rule.

Rule 804(a) is designated as "Unavailability as a witness." The pertinent definitions of an unavailable witness are set forth in Rule 804(a)(2), (3) and (4) as a person who:

\* \* \* \* \* \*

(2) Persists in refusing to testify concerning the subject matter of his statement *despite an order of the judge to do so*; or

(3) Testifies to *a lack of memory* of the subject matter of his statement; or

(4) Is unable . . . to testify at the hearing because of . . . *then existing physical or mental illness or infirmity*; . . . [Emphasis added.]

The trial court held the victim unavailable as a witness only as to her refusal to identify the person who beat her.

■ It should be noted that the crucial factor is not the unavailability of the witness, but rather the unavailability *of his/her testimony. Mason v. United States,*

408 F.2d 903 (10th Cir. 1969); *Johnson v. People,* 152 Colo. 586, 384 P.2d 454 (1963); *People v. Pickett,* 339 Mich. 294, 63 N.W.2d 681, 45 A.L.R.2d 1341 (1954); *State v. Stewart,* 85 Kan. 404, 116 P. 489 (1911); McCormick, Evidence, Section 253 at 608 (2d Ed. 1972); 4 Weinstein's Evidence, 804–35 (1977).

■ Whether the victim's testimony was unavailable rests within the discretion of the trial court. *United States v. Bell,* 500 F.2d 1287 (2d Cir. 1974); 4 Weinstein's Evidence, 804–40.

■ As shown by the record, supra, despite an order of the court, the victim did persist in a refusal to identify the person who beat her. Also, she suffered a mental illness, and infirmity, certain psychological blocks, and some loss of memory that affected the quality of her testimony as to the identification of the specific person who beat her. She denied that defendant beat her and yet she refused to identify the person who did beat her. In this respect the victim was defendant's witness. We, therefore, hold that the trial court did not abuse its discretion in its determination that the victim was an "unavailable witness" for failure to identify the person who beat her. We must now decide whether the testimony of the sister and sister-in-law comes within the exceptions to the hearsay rule set forth in Rule 804(b). In pertinent part, this section reads:

(b) *HEARSAY EXCEPTIONS.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\*     \*     \*     \*     \*     \*

(2) *Statement of Recent Perception. A statement . . . which narrates, describes, or explains an event or condition recently perceived . . . made in good faith . . . while his recollection was clear.*

\*     \*     \*     \*     \*     \*

(6) *Other Exceptions.* A statement not specifically covered by any of the foregoing exceptions but having comparable *circumstantial guarantees of trustworthiness.* [Emphasis added.]

■ In the instant case, the statements made by the victim to the sister and sister-in-law were that defendant beat her, and in addition thereto, that the defendant beat her with a pipe and a fire log; that he kicked her and threw her outside the house. The assertions were made within twenty-four hours of the time the events occurred. The record established that the statements were made in good faith and while the victim's recollection was clear.

■ We also hold that the victim's statements fall within item "(6) Other Exceptions," as "circumstantial guarantees of trustworthiness." The victim and the State's witnesses held a close family relationship. The victim had no probable motive to falsify the statements made fairly soon after the brutal events occurred, and while she was mentally alert. See, *Gichner v. Antonio Troiano Tile & Marble Co.,* 133 U.S.App.D.C. 250, 410 F.2d 238 (1969); *Johnson v. Sleizer,* 268 Minn. 421, 129 N.W.2d 761 (1964). The statements made in identification of the defendant were certain and not equivocal in nature. As Justice Cardozo said in *Snyder v. Massachusetts,* 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674, 90 A.L.R. 575 (1934):

. . . The risk that they would lie is no greater than the risk that attaches to testimony about anything. . . . Here the change is so remote that it dwindles to the vanishing point. . . .

■ The use of "Other Exceptions" is an effective method of avoiding the exclusion of hearsay testimony that is clothed with special assurances or guarantees of trustworthiness. The admissibility of trustworthy testimony will aid in the search for truth. It is highly reliable, highly probative, and the witness is subject to cross-examination. Today, under our Rules of Criminal Procedure, defendants are also clothed with the protection of discovery by way of depositions to probe the competency, the veracity and the trustworthiness of witnesses relevant to the offense charged or the defense of an accused person. Section

41–23–29, N.M.S.A.1953 (2d Repl.Vol. 6, 1975 Supp.). Defendant had the opportunity to depose the victim and the witnesses to test the credibility of the prior statements made.

"Other Exceptions" is an innovation that helps to disentangle us from the archaisms that impede our pursuit of truth. "We are loathe to reduce the corpus of hearsay rules to a straight-jacketing, hypertechnical body of semantical slogans to be mechanically invoked regardless of the reliability of the proffered evidence." *United States v. Castellana,* 349 F.2d 264, 276 (2d Cir. 1965). See also, *Wilson v. Leonard Tire Co. Inc.,* 90 N.M. 74, 77, 559 P.2d 1201 (1976); *United States v. Medico,* 557 F.2d 309 (2nd Cir. 1977).

■ In other words, hearsay testimony that is trustworthy captures a significant place in the trial of the case. It stands on an equal footing with direct testimony even though the prior statements made were not under oath, were not subject to cross-examination and the jury was not present to observe the declarant's demeanor as the statements were made.

Wigmore says:

"   .   .   . [T]he testing required by the hearsay rule is spoken of as cross-examination *under oath.* But is it clear beyond doubt that the oath, as thus referred to, is merely an incidental feature customarily accompanying cross-examination, and that cross-examination is the essential and real test required by the rule. [V Wigmore on Evidence, § 1362, p. 10.]

The instant case proves the insignificance of an oath. The victim testified under oath that she could not answer and did not know who beat her, even though she could answer and did know. This disrespect for the oath makes her non-oath prior trustworthy statements to witnesses fairly soon after the events occurred take on a greater semblance of the truth.

The inability to cross-examine the victim at the time the prior statements were made, was not crucial as long as the discovery process was available and the defendant was assured of full and effective cross-examination at the time of trial.

True, a jury would be in a better position to evaluate the truth of the prior statements if it could be whisked back to observe the demeanor of the victim at the time the prior statements were made. In the instant case it would have been appalling to the jury to hear and view the examination of the battered victim in the hospital when she uttered her statements. Nevertheless, the subsequent examination of the victim at trial afforded the jury a satisfactory basis for evaluating the truth of the prior statements. The jury did scrutinize the victim's demeanor as she explained or denied the earlier statements made. Though the victim's testimony was not available at trial, the circumstances surrounding the earlier statements made render them as trustworthy as that which would have been made at trial subject to cross-examination.

The inferiority of prior trustworthy statements made disappears. Trustworthy statements admitted in evidence meet the test of what can be termed "substantial" evidence to prove the matters asserted by a declarant.

The testimony of the victim's sister and sister-in-law were admissible under Rules 804(a) and (b) because the testimony fell within an exception to the hearsay rule.

C. *The testimony of the sister-in-law and the mother was not hearsay, and therefore admissible under Rule 801(d).*

In addition to Rule 804, supra, we hold that the testimony of the sister-in-law and the mother was not hearsay, and therefore admissible. Our conclusion is reached by reason of Rule 801 of the Rules of Evidence, [§ 20–4–801(d)(1) N.M.S.A. 1953 (Repl. Vol. 4, 1975 Supp.)]. It reads in pertinent part:

(d) *A statement is not hearsay if —*

(1) the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, *and the statement is (A) inconsistent with his testimony   .   .   .. [Emphasis added.]*

The victim was the declarant. Her testimony at trial was inconsistent with prior statements made to her sister-in-law and mother. She was not questioned on statements made to her sister.

■ Under Rule 801(d)(1), supra, the prior inconsistent statements made were not hearsay. *Weiland v. Vigil,* 90 N.M. 148, 560 P.2d 939 (Ct.App.1977). Non-hearsay testimony is substantive evidence to be considered by the jury in its determination of the identification of defendant as the person who beat her. *State v. Skinner,* 110 Ariz. 135, 515 P.2d 880 (1973); *Beavers v. State,* 492 P.2d 88 (Alaska, 1971); *State v. Igoe,* 206 N.W.2d 291 (N.D.1973); *Jett v. Commonwealth,* 436 S.W.2d 788 (Ky.1969); *Gelhaar v. State,* 41 Wis.2d 230, 163 N.W.2d 609 (1969).

After the prior statements were proven, the victim was subject to cross-examination by the defendant.

As previously drafted, Rule 801(d)(1) of the Federal Rules of Evidence was identical with that adopted by New Mexico. As officially adopted in 1975, Federal Rule 801(d)(1) limited the use of prior inconsistent statements as substantive evidence when "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding." New Mexico did not amend its version. The drafted version of Rule 801(d)(1) was subject to severe criticism, criticism that lead to the official version. See *Rhodes v. Harwood,* 544 P.2d 147 (Or.1975); 28 U.S.C.A., Federal Rules of Evidence, Rule 801, p. 525.

The United States Supreme Court version of the drafted rule appears in 28 United States Code Service, Appendix, Federal Rules of Evidence, pp. 519-23 (1975). Pages 520-521 read as follows:

(A) Prior inconsistent statements traditionally have been admissible to impeach but not as substantive evidence. *Under the rule they are substantive evidence.* As has been said by the California Law Revision Commission with respect to a similar provision:

"Section 1235 admits inconsistent statements of witnesses because the dangers against which the hearsay rule is designed to protect are largely nonexistent. The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter. *In many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation.* The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court. . . . Moreover, the requirement that the statement be inconsistent with the testimony given assures a thorough exploration of both versions while the witness is on the stand and bars any general and indiscriminate use of previously prepared statements." [Emphasis added.]

4 Weinstein's Evidence 801-71 (1977) says:

There are two basic reasons for giving substantive effect to prior inconsistent statements: (1) since juries may consider these statements for purposes of impeachment . . . *it is realistic to assume that,* despite limiting instructions, *the jury will decide which statement is true* instead of concluding solely that the witness' credibility is impaired, and (2) *statements made closer in time to the event in question* and before the exertion of external pressures *may be more trustworthy than testimony at trial* and should not be excluded.

All inconsistent statements spoken by the victim under oath and "on the stand" were admissible as substantive evidence. *United States v. Librach,* 536 F.2d 1228 (8th Cir. 1976); *United States v. Castro-Ayon,* 537 F.2d 1055 (9th Cir. 1976); *Rhodes v. Harwood,* supra; O'Connell, Chief Justice, dissenting (544 P.2d at 160); *United States v.*

*Insana,* 423 F.2d 1165 (2d Cir. 1970); *People v. Green,* 3 Cal.3d 981, 92 Cal.Rptr. 494, 479 P.2d 998 (1971).

The testimony of the sister-in-law and the mother was not hearsay, and therefore admissible in evidence to identify the defendant as the person who beat her.

D. *The evidence was sufficient to sustain defendant's conviction.*

The question raised by defendant is whether his conviction can be sustained where the State's case rests solely on contradicted hearsay statements.

■■■ Defendant moved for a directed verdict. The question presented by this motion is whether there is substantial evidence to support the charge. *State v. McKay,* 79 N.M. 797, 450 P.2d 435 (Ct.App. 1969). The prior statements made by the victim constituted substantial evidence of the guilt of defendant.

The serious problem in this case revolves around the question:

Will the admission in evidence of prior statements of the victim sustain defendant's conviction?

4 Weinstein's Evidence, 801–76.1 reads:

(6) The fact that the prior statement is admitted and given substantive effect does not mean that it will suffice *as the sole basis for a conviction.* The question of the sufficiency of the evidence remains, "for the due process clause of the fourteenth amendment may require a minimal standard of evidentiary support to sustain a conviction." [Emphasis added.]

The "Hearsay Rules" are addressed to the admissibility in evidence of prior statements made by a witness. Is the admissibility of hearsay and non-hearsay prior statements sufficient to convict a defendant?

■■■ In the instant case, in prior statements made, the victim told three family witnesses that defendant had beaten her. At the trial, she denied that defendant was the assailant. With respect to this issue, any judgment as to the credibility of

the witnesses and the weight to be given their testimony rests with the jury and not with this Court. "However, a statement, [made by a witness out of court] when established as trustworthy, may properly be considered together with independent or corroborative evidence as proof that the crime charged was committed, see *State v. Paris,* 76 N.M. 291, 414 P.2d 512, March 7, (1966)." *State v. Buchanan,* 76 N.M. 141, 143, 412 P.2d 565, 566 (1966).

■■■ *Buchanan* and *Paris* establish that the "corpus delicti," [the body or substance of a crime] may be proved by circumstantial evidence. "The corpus delicti of a particular offense is established simply by proof that the crime was committed; the identity of the perpetrator is not material." *State v. Nance,* 77 N.M. 39, 44, 419 P.2d 242, 246 (1966). The corpus delicti of aggravated battery is "the unlawful touching or application of force to the person of another with intent to injure that person or another." Section 40A–3–5, supra. Unquestionably, the victim suffered an aggravated battery.

The sole question is: Who committed the crime? Is there sufficient independent or corroborative evidence, circumstantial in nature, that defendant committed the crime?

As we view the record as a whole, we note that in addition to the prior statements made, the victim lived with defendant in his home for a week; that no other person bore any unfavorable relationship with the victim that would lead to a severe beating; that defendant presented no witnesses nor any evidence that caused doubt upon the truth of the prior statements made; that no evidence of defendant's good character was presented. These facts and circumstances corroborate the truth of the prior statements made by the victim. The prior statements made were not the "sole basis for a conviction."

■■■ We conclude that the prior statements made by the victim, together with the circumstantial evidence, established that defendant committed the crime charged.

Defendant claims that the facts submitted to the jury were unreliable because the victim was "unavailable" as a witness, and the defense was precluded from an effective cross-examination. The victim was declared to be "unavailable," not because she denied that defendant had beaten her, but because she refused to disclose who the assailant was. The best evidence defendant could obtain by cross-examination was to question the witness as the State did. The victim was asked two or three times whether defendant had hit her during the time span involved, and her answer was "no." She also denied that defendant had kicked her, or hit her with an iron pipe or a wooden stick of some sort. The State made an effective cross-examination for defendant. Defendant was not precluded from an effective cross-examination.

E. *Defendant's V Amendment and VI Amendment Rights were not violated.*

Defendant contends that his V Amendment right to due process and his VI Amendment right to confront and cross-examine witnesses against him were violated when the trial court permitted the victim's statements, made to her mother, sister and sister-in-law, to be introduced in evidence. We disagree. Defendant's V Amendment right to due process was not argued.

Article II, Section 14 of the New Mexico Constitution provides in pertinent part:

In all criminal prosecutions, the accused shall have the right . . . to be confronted with the witnesses against him . . . . .

"To be confronted with the witnesses against him" also appears in the VI Amendment to the Constitution of the United States.

■ "The purposes of confrontation are to secure to the accused the right of cross-examination; the right of the accused, the court and the jury to observe the deportment and conduct of the witness while testifying; and the moral effect produced upon the witness by requiring him to testify at the trial." *State v. James,* 76 N.M. 376, 380, 415 P.2d 350, 352 (1966).

In *State v. Lunn,* 82 N.M. 526, 484 P.2d 368 (Ct.App.1971), the hearsay testimony of two boys who were present at the time of a shooting in their home was admitted in evidence. The two boys were not called as witnesses. The boys identified defendant as being present, but the right to determine whether the statements were consistent, trustworthy, or res gestae did not exist because defendant did not have the opportunity to cross-examine. The court said:

We hold the admission of the statements attributed to the boys was error because defendant was denied his constitutional right of confrontation, here, the right to cross-examine. . . . Our holding is limited to the circumstances of this case. . . . We announce no rule of general application when an established exception to the hearsay rule is opposed to the constitutional right of confrontation. Where these concepts are opposed, their opposition must be resolved on a case by case basis. [82 N.M. at 530, 484 P.2d at 372.]

■ In *Lunn,* the boys were the declarants who made the out-of-court statements. Their statements were questionable and they were not subject to cross-examination. In the instant case, the victim was the declarant who made the out-of-court statements. Her out-of-court statements were trustworthy and reliable. Yet she was subject to cross-examination. All of the witnesses whose testimony indicated the guilt of the defendant were present and were cross-examined. The purpose of the confrontation clause was satisfied. Defendant was "confronted with the witnesses against him."

All that we can gather from defendant's argument is that she was not subject to full and effective cross-examination, and that she denied all recollection or knowledge of the ultimate event. Both contentions are without merit.

F. *There was no evidence that defendant abused victim's son.*

■ Defendant claims there was no evidence to show that defendant abused the

victim's son, Miguel, in violation of § 40A-6-1(C). We agree.

The only testimony on the subject is that of the victim. She stated that she never saw defendant hit her son. Out of the presence of the jury, the sister testified that the victim told her that defendant had hit Miguel. When called to testify before the jury, the sister said that she never questioned the victim about what happened between the victim's son, and the victim never told her.

At the close of the evidence, the trial court asked the State:

Where is the testimony concerning great bodily harm, insofar as Miguel is concerned?

MR. TUPLER: Your Honor, there is no such testimony.

Nevertheless, the trial court submitted this charge to the jury.

Now, the State claims that defendant had the clear opportunity to abuse the son, that the victim was not an eye witness to any beating of her son, that the sister testified (not before the jury) as to beating of the child. Therefore, "The weight of evidence and credibility of witnesses are for the jury to determine."

The State seeks to pole vault to conviction without a pole.

The conviction of the defendant for aggravated battery is affirmed. The conviction of the defendant for abuse of the victim's son is reversed.

The trial court shall enter an amended "Judgment and Sentence" in which the court shall find that defendant was not guilty of a violation of § 40A-6-1(C), Abuse of Child, by reason of the decision of this Court; that the consecutive sentence imposed on defendant in addition to aggravated battery be deleted.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.